Bissell, J.,
delivered the opinion of the court.
This suit is about two coats and the right of a tailor to assert a lien for the contract price of making them. Ever since the representatives of the craft assembled in Tooley street, the deliberations of the trade have attracted world-wide attention, and the solution of their disputes have required the application and settlement of the gravest and most complicated doctrines. The present is no exception to the gen *299 eral course of history. The peculiar circumstances and proven facts of this difficulty seem to require a novel application of possibly familiar and thoroughly settled rules of law, since the books are barren of exact precedents which admit of easy adjustment to the controversy. One monument more will not add to the luster and immortality of their name, but it may prove a “foot-print” to point out the way to less fortunate toilers in other fields of labor. The litigation cannot be wholly ended by this decision. The record lacks the fullness of testimony essential to a complete determination of their differences, for the case was not tried on such a close perception of the settled law of the lien secured to the mechanic as to develop everything necessary to an accurate ascertainment of the rights of the parties. So far as may be, the principles by which the claims of the litigants must be ultimately measured will be set down.
Some time in the year 1891 Louis Harrison, the appellee, was a merchant'tailor doing buisness in the city of Denver. At that time the appellant Hillsburg was a tailor working at his trade in the city and in the employ of the merchant Harrison. For a time which it is unimportant to state, Hills-burg worked in the shop belonging to his employer, but when the present trouble arose he was working at his home on materials which were cut and furnished him to turn into complete garments. Whether there was a distinct arrangement that the tailor should do the particular work over which the dispute arose at his house it is unnecessary to determine. It is sufficient to say that the record discloses the fact that the tailor took the work home with the knowledge and permission of the employer. He took two coats; one an overcoat and the other a cutaway, for the making of which he was to receive $26.00, being $12.00 for the one, and $14.00 for the other. It was not shown that there was anything said as to the time within which the coats should be finished, nor was there any proof offered as to the length of time the tailor kept the goods, and whether it was a reasonable or an unreasonable period for him to occupy in making them. *300 This occasions one difficulty in deciding the case. Some time after the goods were taken away the merchant sent one of his employees to the house after the garments, but the tailor refused to deliver them, and claimed to hold them for the sum that would be due him when the coats were completed. They were not finished when they were sent for, and it is fairly deducible from the record that they were unfinished at the time they were seized under the writ of replevin issued in the present suit. The employer seems to have done nothing but demand the goods. He made no tender of the value of the labor done, but assumed that he had a right to resume possession without regard to the claims of the workman. The merchant offered some proof which may be fairly said to show the existence of an universal custom among tailors to require the production of the finished garment at the store, and its submission to the cutter or the proprietor to determine the character of the work, and whether the performance is in accordance with the contract. The merchant offered proof tending to show that the garments were worth $105, $50.00, and $55.00, respectively, and that by reason of the delay in supplying the garments to his customers he had lost the sale and been damaged substantially in their total value. The court entered judgment giving him possession and assessing his damages at $50.00.
It is impossible on this record to determine whether the merchant is entitled to recover, or the tailor to hold the goods until the contract price is paid. The most that can be done is to hold that on his proofs the merchant was not entitled to judgment. Some of the questions discussed by counsel are unimportant to decide in the view which the court takes of the law. The tailor was a mechanic and entitled to hold possession of the garments until the price of the labor which he had put on them for their betterment was paid by the employer if he fulfilled his contract. This was true at the common law and is true under the statute. With respect to this class of artisans the statute is but declaratory of the common law save as to the machinery which it pro *301 vides for the enforcement of the lien. If it is conceded that the mechanic was in the rightful possession of the goods under a contract to bestow labor on them, his right to a lien for the price of that work is an inevitable deduction. The only trouble is that at the time the suit was brought the garments were not finished. This fact of itself would not destroy his right to the lien, nor his right to maintain the possession essential to its assertion and establishment, providing there was no failure to perform according to the terms of a specific agreement between the parties, or a failure to do the work within a time which was reasonable under the circumstances. Performance of the contract is undoubtedly essential to the creation of a lien and the existence of the right of enforcement. It might possibly be that a failure on the part of the tailor to finish the garments within a reasonable time would deprive his employer of the sale of the goods and subject him to great damage. It would not then be consistent with the theory on which the right of lien rests to permit the artisan to hold the goods and compel the payment of the wages which ought in law and equity to become due only on full performance. There would be neither law nor equity in compelling the employer to part with his money in order to gain possession of that which he owned, and force him to resort to a fruitless suit against the mechanic to recover the damages which he had sustained. On the other hand it is equally true that the merchant cannot maintain an action for the possession of the property without establishing one of three things. First, he may maintain the suit provided he show a performance of the contract and the payment of the amount due under it. Second, the same result can be arrived at if he shows a tender of the sum found on the trial to be due to the artisan, provided he keeps his tender good under the law by bringing his money into court, even though the artisan may wholly refuse to take it, claiming some other sum; the only condition being that if the employer relies upon the tender there is cast upon him the duty of making it timely and sufficient. Third, assuming *302 all other proofs to be sufficiently made, he may maintain the action if he show a failure on the part of the workman to do-that for which he has contracted. It was not possible at the common law, neither is it under the statute, for the workman to refuse to perform his contract according to its terms, and insist on retaining possession in the enforcement of his claimed lien as against the superior right of the owner of the goods. No such rule has ever been established: Hodgdon v. Waldran, et al., 9 N. H. 66; Hilger v. Edwards, 5 Nev. 84; Munson v. Porter, 63 Ia. 453; Bloom v. McGehee, 38 Ark. 329; Scarfe v. Morgan, 4 M. & W. 270; Hall v. Tittabawassee Boom Co., 51 Mich. 377; Jones on Lines, vol. 1, §§ 589-1025, 1029.
The employer wholly failed to bring himself within the scope of any one of the three rules above laid down. He neither paid the bill, made any tender, nor showed any failure to perform according to the terms of any contract which he had with the employee. He could not then be entitled to a judgment giving him possession.
The employee is somewhat similarly circumstanced, and he is not entitled to an affirmative judgment, declaring that he had a lien which he might maintain as against the employer. This comes because he failed to show that he had performed his contract, or that the time within which the contract might be performed had not yet elapsed. Undoubtedly under the evidence judgment should have gone against the plaintiff and left the tailor in possession, since his original holding was rightful, and the employer failed to make the proof essential to sustain the right of possession in him.
It has been quite strongly urged in the briefs that the court erred in admitting proof of the custom prevalent among merchant tailors and their employees, to require workmen to return garments for inspection before they receive compensation for their labor. It is insisted that that custom destroys the common law and statutory right of lien which mechanics have who do work on personal property which is rightfully in their possession. The force of the *303 contention is not apparent. If the custom is an universal one, as it seems to be according to the evidence, the contract was presumably entered into with reference to it. It in nowise interferes with the lien of the mechanic, or prevents the assertion of his rights, and is but a reasonable regulation permitting the employer to inspect the work to see if the performance is according to the contract before he parts with the price of it. To produce the work in the shop for the inspection of either the cutter or the proprietor would in nowise affect the lien or the employee’s right to it, for there would be no such unconditional surrender of possession as would be necessary to destroy the lienor’s rights. If the employee was wrongfully refused the right to resume his possession after the inspection, in case the employer insisted the work was not according to contract, he would not be remediless, but his right of possession would be amply protected in a proper action therefor.
Doubtless upon the succeeding trial the facts which are essential to a complete determination of this controversy will be brought before the court which will be able to render the proper judgment in the light of the principles herein laid down.
For the error committed in the entry of the judgment this case will be reversed and remanded for a new trial in conformity with this opinion.

jReversed.