# CHICAGO, M. & ST. P. RY. CO. v. FEDERAL RESERVE BANK OF SAN FRANCISCO

No. 4519.   Decided September 20, 1927.   (260 P. 262.)

*Dey, Hoppaugh, Mark & Johnson,* of Salt Lake City, for appellant.

*Pierce, Critchlow & Marr,* of Salt Lake City, and *Albert C. Agnew,* of San Francisco, Cal., for respondent.

GIDEON, J.

The Chicago, Milwaukee & St. Paul Railway Company instituted this action against defendant Federal Reserve Bank of San Francisco in the district court of Salt Lake county to recover the sum of $459.99 alleged to be the amount of a check drawn to its order upon the Citizens' State Bank of Buhl, Idaho. The case was tried to the court sitting without a jury and resulted in a judgment in favor of defendant. From that judgment this appeal is prosecuted.

A stipulation of facts was entered into by the parties. Testimony was given on the issues not covered by stipulation. There is, however, little, if any, dispute as to the facts. The court made findings on all material issues presented by the pleadings.

By the assignment of errors, certain findings of the court are assailed as being contrary to the evidence and also contrary to and inconsistent with other facts found by the court. The main contention of plaintiff, however, is that the judgment of the court is not supported by the findings, but is contrary thereto.

From the court's findings, the following facts appear:

That on November 17, 1921, at Tomah, in the state of Wisconsin, plaintiff received from one E. E. Beeman of Buhl, Idaho, a check in the sum named drawn on the Citizens' State Bank of Buhl. That the check was indorsed in blank by plaintiff and deposited in the Bank of Tomah. That on the date when deposited the amount of the check was credited to plaintiff's account and a draft drawn in favor of plaintiff on the Tomah bank's correspondent in Chicago. That in due course the check was forwarded by the bank at Tomah to the Marine National Bank of Milwaukee, for collection and remittance. That the Milwaukee bank forwarded the check to defendant, Federal Reserve

Bank of San Francisco, Salt Lake branch, for collection and credit. That on November 25, 1921, defendant received the check and forwarded it direct to the Citizens' State Bank of Buhl, the drawee bank, for collection and remittance. That the check was received by the drawee bank on November 25th and was charged to the account of the drawer, Mr. Beeman. That the check was marked "Paid," and thereafter the canceled check was delivered to the drawer and the amount of the check charged to his account. That the Citizens' State Bank of Buhl, on the date of the receipt of the check, issued and mailed to defendant at Salt Lake City a draft upon its correspondent, the First National Bank of Twin Falls, Idaho, in payment of this particular check and other items sent to it by defendant. That the draft was received by defendant at Salt Lake City, and was, in regular course, forwarded to the First National Bank of Twin Falls, and the same was received by the last-named bank on December 2d. That the Citizens' State Bank of Buhl had been closed by the commissioner of finance of the state of Idaho, and did not open for business on December 2, 1921. That the First National Bank of Twin Falls refused payment, and the draft was returned to defendant. That thereupon defendant charged the amount of the check, through the Federal Reserve Bank of Chicago, against the account of the Marine National Bank of Milwaukee, and that bank in turn charged the amount of the check against the Bank of Tomah, and the last-named bank charged plaintiff's account with the amount. That the Bank of Tomah, in accepting said check from the plaintiff, did so under the following agreement:

"This bank, in receiving out of town checks and other collections, acts only as your agent, and does not assume any responsibility beyond due diligence on its part the same as on its own paper."

That the Marine National Bank, in accepting said check from the Bank of Tomah, did so under the following agreement:

"In accepting items payable outside of Milwaukee, this bank acts only as your agent, and beyond due diligence assumes no responsibility until final returns are received. The right is reserved to forward items direct to drawee bank."

Other findings of the court will be noted in the course of this opinion.

Two grounds of negligence are relied upon by plaintiff as stated in its brief:

"(1) That it [defendant] sent the check direct to the drawee bank for collection; (2) that it accepted in absolute payment of said check something other than cash, to wit, a draft drawn upon another bank, and by so doing it made that draft its own, became responsible for the amount thereof, and assumed all risk of collection of that draft."

In the briefs, both parties have discussed the right of plaintiff to maintain this action against defendant. The contention of defendant is that there is no privity of contract shown between plaintiff and defendant and hence no basis for any complaint against it for negligence. It is plaintiff's contention, and that is the theory upon which the suit was instituted, that the negligence resulting in the loss was the negligence of its agent, the defendant, and hence the the defendant is liable for any negligence which resulted in loss to plaintiff.

It is conceded by both parties that the authorities are not uniform respecting this particular question. There are two lines of authorities recognized by the parties and referred to in the cases cited. One is known as the New York rule, and the other as the Massachusetts rule. The federal cases follow the New York rule.

The Circuit Court of Appeals, Eighth Circuit, in *First National Bank of Denver* v. *Federal Reserve Bank of Kansas City, Mo.*, 6 F. (2d) at page 341, has this to say respecting these two lines of authority:

"There exist two rules among the state courts touching the responsibility of banks undertaking collections at a distance. One, known as the New York rule, is that, where a bank undertakes to collect a check or other bill of exchange, it is liable for neglect

of duty in its collection arising from the default either of its own officers or any subagent employed to assist in collecting the paper, in the absence of contract or statute varying such liability. The other rule, known as the Massachusetts rule, is that the initial bank is liable only for the selection of a suitable local agent with whom to intrust the collection and for the transmission of the paper to such agent with proper instructions."

The trial court overruled defendant's argument on this phase of the case by denying its motion for nonsuit and by overruling its demurrer. Whether the court based its findings upon the allegations of the facts respecting the conditions under which the Bank of Tomah received the check in controversy for collection, or by reason of the rule of law announced in the decisions of the Supreme Court of Wisconsin, or upon other grounds, does not appear in the record. It only appears that the court overruled the contentions of defendant in that regard. We are not called upon to, neither do we in this opinion, determine whether the so-called New York rule or the so-called Massachusetts rule should become the law of this jurisdiction. Nor are we determining whether the conditions upon which the initial bank receiving the check for collection would import into the contract between the parties the duties imposed by the so-called Massachusetts rule. Concededly the trial court had jurisdiction of the parties and of the subject-matter involved in this controversy. Hence any ruling of the trial court would not involve the question of jurisdiction. Naturally, plaintiff is not complaining of the court's rulings either with respect to the overruling of the demurrer or the denial of the motion for nonsuit. These rulings were in plaintiff's favor. Defendant has assigned no cross-errors, nor is there any error assigned in any way with respect to the rulings on the demurrer and on the motion for nonsuit. For the defendant to have had the rulings of the court in overruling the demurrer and denying the motion for nonsuit reviewed it should have assigned cross-errors. Otherwise this court has no authority to review such rulings.

Plaintiff in the main relies on the generally accepted rule that a collecting agent is without authority to accept for the debt of his principal anything other than that which the law declares to be legal tender. Such is the rule announced by the great weight of authority, if not by universal authority. The authorities, however, all recognize that this generally accepted rule may be changed or modified either by. contract or by some general usage or custom prevailing in the community where the collection is made; that is to say, the authorities recognize that the general rule or custom is incorporated into the contract by which the agent assumes and undertakes to perform the duties required of him.

It is insisted that the defendant bank received a perfectly good check, made payable to the plaintiff, and surrendered it to the drawee bank without receiving legal tender or any substitute or other paper from which legal tender could be realized. Numerous authorities are cited and quoted from by plaintiff announcing and adhering to the general rule, namely, that it is the duty of a bank or other collecting agent to take, in return for a check or other paper intrusted to it for collection, only what the law declares to be legal tender.

It is alleged in the answer as an affirmative defense, and the court found, that, under a regulation issued by the Federal Reserve Board having general control over Federal Reserve Banks, it is not negligence for a Federal Reserve Bank, such as defendant, to forward a check or other negotiable instrument direct to the drawee bank for collection and remittance. The undisputed testimony is that that was the universal custom in Utah and Idaho prior to and since the adoption of the regulation issued by the Federal Reserve Board. The existence of this regulation controlling Federal Reserve Banks and the uniform custom of banks in this and adjoining states is not seriously controverted by plaintiff, but it is contended that, by reason of the failure of a number of banks in Idaho, and the general weakness of the banks

in that state at this particular time it was negligence on the part of the defendant, regardless of the custom and regardless of the regulation prescribed for the control of banks such as defendant. We shall refer later to this claim of plaintiff.

The weight of authority, while recognizing the rule of law contended for by plaintiff respecting the duty of a collecting bank, in considering and determining the negligence of such banks, also recognizes that, if a collecting bank follows an established reasonable custom or usage of banks in the locality where the collecting bank is situated, in the absence of contract or special instructions such collecting bank is not chargeable with negligence. In that regard the trial court, in substance, found that at the date of the deposit and of forwarding the check to defendant bank it was, and prior thereto had been, the usage and custom of Federal Reserve Banks, including the defendant, to forward checks for collection and remittance direct to the banks upon which such checks were drawn and to receive in payment either money or exchange subject to payment drawn by the bank or banks on which the checks were drawn, at the option of the drawee bank. The trial court also found that this practice and custom is and was uniform and continuous and consistent with the best banking practices, and necessary and reasonable in the collection of exchange at par in the volume and to the extent that federal banks are required to handle business in carrying on and conducting the normal banking transactions of the United States; also that such custom and practice was well known to, and recognized by, the banks of the country and by the Bank of Tomah and by the Marine National Bank of Milwaukee in particular. The further finding is made that, at the time the defendant received the check in question, and for a long time prior thereto, the defendant held out and represented to the public and to remitting banks that it would receive for collection and undertake to collect checks only upon the condition, among others, that the remitting

bank authorizes the defendant and its subagents to forward such checks direct to the banks on which the same were drawn and that the remitting banks assumed all responsibility or liability occasioned by or as a result of such direct routing of checks, and that the remitting banks authorized the defendant to charge back any item for which it did not receive final payment; also that, at the time the check in question was forwarded to the defendant by the Milwaukee bank, the conditions upon which the defendant agreed to receive the check for collection were well known to the Marine National Bank, and were accepted by it as the conditions and terms upon which the defendant agreed and undertook the collection of such check. The twenty-third, twenty-fourth, twenty-fifth, and twenty-sixth findings of the court are as follows:

"(23) That at the times of the transactions herein referred to, and for a long time prior thereto, it was and has been and is now the custom and practice of all banks and bankers in the states of Utah and Idaho to issue and accept in settlement of collection items forwarded to or received by them from banks in other cities or towns exchange upon correspondent banks, and that the plaintiff's agents, in forwarding the check referred to herein to the defendant for collection, did so with full knowledge and notice of the existence of such custom and practice. That said practice and custom was and is uniform and continuous and consistent with the best banking practices, and was and is necessary and reasonable in the collection of exchange in the volume and to the extent that commercial banks are required to handle such business in the dispatch of the normal commercial and banking transactions of the states of Utah and Idaho.

"(24) That at the time defendant received said check for collection it had knowledge that banks in Southern Idaho, and particularly the banks at Buhl, Idaho, and vicinity, were in an extended condition, and that fifteen banks had already failed in Idaho in 1921.

"(25) That at the time defendant received said check for collection defendant knew that an unusual and unprecedented situation existed in Idaho with respect to the financial condition of banks doing business therein, which financial condition threatened the solvency of said banks.

"(26) That the Citizens' State Bank of Buhl was not a member bank of the Federal Reserve System, and that the defendant had

not examined said bank, and had under the law no right to examine said bank, and that the defendant had no direct or personal knowledge of its condition, or any knowledge other than of the condition of banks in Idaho generally."

These findings of the court are amply supported by the testimony in the record. It would serve no good purpose to review the testimony, especially in view of the fact that the testimony offered by the defendant in that regard is not disputed by any testimony on the part of plaintiff.

The third and fourth headnotes, which reflect the opinion of the court, to *Spokane Valley State Bank* v. *Lutes*, 133 Wash. 66, 233 P. 308, are:

"Where the evidence showed that there was a general custom among banks to send draft for collection through Federal Reserve Bank rather than directly to the bank upon which it was drawn, held that owner of certificate of deposit was bound thereby, although such custom was not known to him at the time he placed certificate with bank for collection."

"Acceptance of a draft instead of cash, in exchange for certificate of deposit, did not constitute negligence, where evidence showed that it was custom of banks to make remittances by draft and not by shipment of cash."

In 1 Morse on Banks and Banking (5th Ed.) § 220, in discussing "What Law and Usage Shall Govern Collection," it is said:

"The collecting bank must be governed in all matters concerning the time and mode of presentment, demand, and notice by the laws and customs which prevail in the place of its own situation. If the paper has been transmitted from a distant place, where the laws and customs are different, the transmitting party, if he wishes these to be conformed to, must send special instructions to that effect. In that case the collecting bank, if it undertakes the collection, will be bound, at its own peril, not to deviate from the course thus prescribed; though, in the absence of express directions, it would not be bound to inquire into, nor probably would it even have the right to recognize, if it knew, the laws or usages of any other place than its own. The understanding, which is assumed to be mutual and to enter into the contract of the parties, is that the bank shall per-

form the various acts which are embraced in the business of collection in every respect according to the method which it is wont to pursue, in accordance with the local law, rules, and regulations."

In *Capital Grain & Feed Co.* v. *Federal Reserve Bank*, 3 F. (2d) 614, the District Court of the Northern Division of Georgia, in considering a question similar to the one under review here, at page 615, says:

"While the relationship between plaintiffs and the collecting bank is controlled by the law and the contract at the place of deposit, as has just been ruled, the duty of the correspondent bank is primarily regulated by the law and the customs of banking at the place where it does its business, and may be affected likewise by special instructions given it or agreements made."

The second headnote to *Farmers' Bank & Trust Co.* v. *Newland*, 97 Ky. 464, 31 S. W. 38, reads as follows:

"Where one delivers a certificate of deposit to a bank to be collected from a bank in another place, without any inquiry as to the methods of collection, there is an implied understanding that the established usage in making collections will be followed; and, if the bank to which it is delivered acting accordingly and in the exercise of due care, mails the certificate to the payor bank, and receives the latter's check on a bank in a third place, it will not be liable to the owner of the certificate if the payor bank becomes insolvent before presentation of the check."

The fourth headnote to *Hilsinger* v. *Trickett*, 86 Ohio St. 286, 99 N. E. 305, Ann. Cas. 1913D, 421, is as follows:

"Usage of banks prevalent in the vicinity, and generally followed, are presumed to be reasonable, and the burden of showing them unreasonable is upon the one who assails them; the question being not, 'Is the custom reasonable,' but 'Has it been shown to be unreasonable.' "

Numerous other cases are cited to the same effect.

The foregoing headnotes not only reflect the opinions of the courts in the particular cases, but, in our judgment, they

express the weight of authority on the particular question now under review. To demand and receive currency for checks transmitted by banks for collection would greatly hamper the commercial business of the country, if not render it practically impossible to conduct the volume of business now known to pass through the clearing houses of the country. There was no effort made to show that this system or usage in vogue in the banking world, and particularly among the banks in Utah and Idaho, is not reasonable, or that any better system had been or could be devised for handling the commercial business of the country. The court was therefore fully justified, in our judgment, in finding that the practices and usages of the banks in making these collections in the manner in which the defendant made the collection in this case "was and is necessary and reasonable in the collection of exchange at par in the volume and to the extent that said Federal Reserve Banks are required to handle such business in the dispatch of the normal commercial and banking transactions of the United States."

Plaintiff, while not conceding the reasonableness or necessity of the rule interposed as a defense in this action, contends that, granting such custom and usage could ordinarily be employed by a collecting bank without incurring liability, nevertheless, by reason of the condition of banks in Idaho at the date in question, it was negligence on the part of defendant to surrender the check in question without receiving currency in exchange therefor. True, the court found that at the time in question, an unprecedented situation existed in Idaho with respect to the financial condition of banks, and which condition threatened the solvency of the banks. It nevertheless found that the defendant had no means of ascertaining the condition of the Citibens' State Bank of Buhl, and had no direct or personal knowledge of the general condition of banks in the state of Idaho. We are unable to conclude that the knowledge of the general banking conditions in Idaho would require the defendant to depart from the usual custom of collecting checks

drawn upon the Citizens' State Bank of Buhl, in the absence of any knowledge as to its financial responsibility, or in the absence of any special directions as to the method to pursue in collecting the check in controversy. The testimony and the findings of the court are all to the effect that the defendant bank, in its efforts to collect the check, forwarded it through the bank of deposit, pursued the ordinary and usual method pusued by banks in this community. In doing so, it cannot be charged with negligence.

There are other questions discussed in the briefs of counsel, but we are of the opinion that plaintiff must fail on the ground noted, and hence it becomes unnecessary to consider such other questions.

Judgment affirmed, with costs.

THURMAN, C. J., and CHERRY and HANSEN, JJ., concur.

STRAUP, J. (concurring). The proper disposition of the case, in some particulars at least, is dependent upon the findings of the court below, of which no complaint is made. The court, by finding 15, found:

"(15) That, when said check was deposited by plaintiff in the Bank of Tomah, said bank issued and delivered to plaintiff in payment therefor its draft drawn upon a Chicago correspondent."

The court further found:

"(17) That the Bank of Tomah, in accepting said check from the plaintiff, did so under the following agreement: 'This bank, in receiving out of town checks and other collections, acts only as your agent, and does not assume any responsibility beyond due diligence on its part the same as on its own paper."

"(18) That the Marine National Bank, in accepting said check from the Bank of Tomah, did so under the following agreement: 'In accepting items payable outside of Milwaukee, this bank acts only

as your agent and beyond due diligence assumes no responsibility until final returns are received. The right is reserved to forward items direct to the drawee bank.' "

Substantially the same kind of a finding was made as to the defendant bank by finding 22, and wherein the court further found:

"That the remitting bank authorized the defendant and its sub-agents to forward such checks direct to the banks on which the same were drawn for collection and remittance, that such remitting bank assumed full responsibility and liability for any loss through, or occasioned by or as a result of, such direct routing of checks, and that such remitting bank authorized the defendant to charge back any item for which it did not receive final payment."

Upon the fact as found in finding 15, I think it clear that the plaintiff had no cause of action against the defendant. Upon that finding there was no relation of agency between the plaintiff and the Tomah bank nor between plaintiff and defendant. Such finding shows that the title to the check passed from plaintiff to the Tomah bank when plaintiff indorsed the check over to the Tomah bank and received its draft "in payment" thereof, and that the relation between them was that only of indorser and indorsee. In such case, if because of negligence of the Tomah bank or any of its transmitting agents the check was not presented in due course, and as the result thereof was not paid, or if the failure of its collection was due to negligence of the Tomah bank or any of its transmitting agents, such negligence in no sense was chargeable to plaintiff, and the Tomah bank had no legal right to charge the loss to plaintiff; and the fact that the loss was charged to plaintiff gave it no right to hold defendant liable for alleged negligence on its part. In such case its rights in the premises were to resist the action of the Tomah bank charging the loss to plaintiff. When plaintiff received the draft direct from the Tomah bank

"in payment of the check indorsed over to it by plaintiff, the plaintiff no longer had any interest in the check. Its concern after that was only with respect to its liability in case of dishonor of the check on due presentation. In such view the judgment of the court below in favor of defendant was right.

But finding 17 is somewhat in discord with finding 15. I do not well see how both may be true. However, no complaint is made of either finding. Thus, what principle of law should be applied to findings 17, 18, and 22, assuming them to be uninfluenced by finding 15, or as though the fact as found by finding 15 was not in the case? Finding 17 shows, not that the title to the check passed to the Tomah bank, not that it became its property, not that anything was given "in payment" of it, but that the Tomah bank received the check only as an agent of plaintiff for collection and to be responsible to the plaintiff for a want of diligence, or for negligence, or for breach of duty, in acting for plaintiff in the collection of it. Upon about the same terms and under about the same conditions the Marine National Bank received the check from the Tomah bank and the defendant bank from the Marine National Bank. In such case, if the loss of the check was occasioned through negligence or want of diligence of the Tomah bank, or of the Marine National Bank, or of the defendant bank, I think plaintiff had a cause of action against the Tomah bank, unless its agreement with plaintiff restricted its liability merely to its own personal, and exclusive of any imputed, negligence, or against either of the other banks whose negligence occasioned the loss. Whether the agreement as found between plaintiff and the Tomah bank so restricted the latter's liability I need not consider, as the action is not against it. Thus, because of the relation as found, if the defendant bank was negligent which negligence occasioned the loss, I think the action was maintainable against the defendant bank. On such theory the question then is whether or not on the facts as found the defendant bank was so clearly guilty of negligence which

occasioned or caused the loss as to require a finding or conclusion to the contrary to be vacated or disapproved as being not sufficiently supported. Mr. Justice GIDEON has considered the case from that viewpoint, and reached the conclusion that on the facts as found by the court below the defendant bank was not so clearly or conclusively guilty of negligence or want of diligence as to require a finding to the contrary to be vacated. In that view and in that result I concur.

As pointed out, it is claimed that the defendant bank was negligent in two particulars: (1) In presenting the check direct to the drawee bank, the Citizens' State Bank of Buhl; and (2) in not demanding money in payment thereof, and accepting a draft or an exchange on the Twin Falls bank.

As to the first, it is enough to say that, as found by the court below, the defendant bank received the check for collection on the condition that the check could be or was to be presented direct to the drawee bank. That was the defendant's contract. In receiving the check for collection, it had the undoubted right to impose such condition.

As to the second, the matter is not so clear. The court below found that the defendant bank was not negligent in such particular. We are asked to overthrow such finding chiefly on the ground that the defendant bank, in payment of the check, was unauthorized to accept anything but money, and, when it accepted the draft on the Twin Falls bank in payment thereof, it did so at its peril, and in such respect was especially guilty of negligence because of its knowledge, as found by the court, that the banks in Southern Idaho, and particularly the banks at Buhl and vicinity, were in an extended condition, that fifteen banks had failed in Idaho in 1921, and that an unusual and unprecedented situation existed in Idaho with respect to the financial condition of banks doing business therein, but that the defendant bank had no knowledge as to the financial condition of the Citi-

zens' State Bank of Buhl. However, also as pointed out by Mr. Justice GIDEON, the court further found that there was a well-established, prevalent, uniform, and continuous custom and usage in banking business in Utah and Idaho, of which the plaintiff had knowledge, that in such case, as here, instead of demanding and accepting only money, to take drafts or exchange upon correspondent banks and that banking business in making collections could not well be conducted on any other basis; that to have pursued any other course would have aggravated the banking conditions in Southern Idaho, inasmuch as it was not usual nor customary, nor the practice of banks, to carry in their vaults cash to meet out of town collections, and in such respect kept reserves or made provisions with corresponding banks for such purpose. That such custom or usage is unreasonable or repugnant to law, or 'to the terms of any shown contract, may not successfully be asserted. When I say repugnant to or inconsistent with law, I mean something more than a mere rule or doctrine of law, for customs and usages sometimes of necessity are repugnant to mere rules or doctrines of law, nevertheless for such reason are not regarded as invalid or unreasonable. While an agent acting for his principal in collecting a note or check, in the absence of evidence to the contrary, is not authorized to accept in payment of the note or check anything but legal tender and thereby bind the principal, as is contended by the plaintiff, yet such generally is a mere rule or doctrine of law which by agreement may be modified or waived, and so too may it be modified or waived by a valid, reasonable, and relevant custom or usage known to the parties concerned or of such notoriety as to presume knowledge. Valid and reasonable customs and usages concerning the subject-matter of a contract of which the parties are chargeable with knowledge or by implication incorporated therein, unless expressly or impliedly excluded, of course, not to contradict, add to, or take from the contract, or to vary its terms, but on the theory that the usage or custom forms a part of the contract

when not in conflict with it. As applied to negligence, the commission or omission of an act or the doing of it in a particular way, in accordance with a general and usual custom or usage, may not be conclusive against a charge of negligence, for the test in such case is the doing or failure to do what prudent men under similar circumstances would do. The custom or usage may itself not be prudent; hence the doing of an act in accordance therewith my nevertheless constitute negligence. So while the doing of an act in accordance with custom and usage, doing it as such an act under the same or similar circumstances usually and generally—customarily—is done by those skilled and experienced in the business, is in most jurisdictions not conclusive against a charge of negligence, nevertheless when so performed has great evidentiary or probative value against a charge that the act as so done was negligence. An act performed in a way that it generally and usually is performed by those skilled and experienced in the business at least is prima facie or some proof that such was not a negligent way, and sufficient to support a finding against negligence. And then the finding as to the defendant bank's knowledge as to the financial condition of banks in Idaho, and the claim made that by reason thereof due care required the defendant bank to demand and accept only money in payment of the check, are, to some extent at least, minimized by the further finding that banking business, in making out of town collections, could not well be conducted in such way and that to have here pursued such a course would have aggravated the banking condition in Southern Idaho for the reason stated in such further findings. I therefore, think the finding or conclusion against negligence is sufficiently supported. I deem it proper to say what I have, lest it be assumed that the affirmance of the judgment on the ground stated in the main opinion implies a holding that the action was maintainable by the plaintiff, if the defendant bank was guilty of negligence, even though the facts be as found in finding 15.