THOMAS A. COOPER, BANK COMMISSIONER

*vs.*

FIDELITY TRUST COMPANY

PETITION OF EDWARD K. LEIGHTON FOR PRIORITY.

Cumberland.      Opinion, March 15, 1937.

*James L. Boyle*, for claimant.
*Cook, Hutchinson, Pierce & Connell*, for defendant.

SITTING: DUNN, C. J., STURGIS, BARNES, HUDSON, MANSER, JJ.

MANSER, J.   On appeal from decree of sitting Justice denying priority of claim. Briefly, the facts are that Edward K. Leighton, the petitioner, left for collection with the Peoples Ticonic National Bank of Waterville (hereafter called Ticonic Bank) two City of Omaha bonds, $1000 each, due March 1, 1933. No credit was given to the petitioner at the time of the deposit. In accordance with its established practice and usage, the Ticonic Bank forwarded the bonds to the New York Trust Company for collection with instructions to credit the proceeds to the Fidelity Trust Company for its account. The bonds were paid and the proceeds received by the New York Bank, which on March 2, 1933, credited the Fidelity Trust Company with the amount and mailed a notice of such credit to said Trust Company. This notice was received in due course of mail on March 3, 1933. The actual book entry crediting the Ticonic Bank with the sum was not, however, made that day because of insufficient time to take care of all of the clerical work which had accumulated. On March 4, all banks were closed by governmental proclamation and the Ticonic and Fidelity Trust never reopened. On March 11, instructions were received by the Fidelity Trust Company to adjust its books to conform with those of its correspondent banks, and the actual book entry crediting the Ticonic Bank with the proceeds of this collection was made on that day. The Ticonic Bank made no debit or credit entries on its books with respect to this item.

As found by the sitting Justice, it is unnecessary to determine the respective rights of the petitioner and the Ticonic Bank as between themselves. The petitioner elected to proceed against the Conservator of the Fidelity Trust Company and may recover either in his own right or as the beneficial owner of such claim as the Ticonic Bank may have to the proceeds of the collection. The proceedings show that the Ticonic Bank was given the right to intervene, and accordingly by settling the rights which the petitioner has, there is likewise determined any claim which the Ticonic Bank itself might set up.

The Court adopts the view of the sitting Justice that, as presented, the claim for priority is based on the following general propositions:

(1) The deposit of bonds being for collection, the only relation created between the petitioner on the one side and the Ticonic Bank and its correspondent banks on the other, was that of principal and agent and not of debtor and creditor.

(2) Each bank, receiving the money with knowledge that it was the proceeds of a collection item held it subject to a trust in favor of the petitioner.

(3) If the relation of debtor and creditor did exist between the various banks, and the petitioner was bound by such banking custom, both the Ticonic Bank and the Fidelity Trust Company were insolvent when the New York Trust Company collected the money, and under such circumstances they must hold it in trust for the true owner.

(4) The Fidelity Trust Company was, in fact, closed before it received the money and, therefore, it became its duty to hold the funds in trust for the petitioner.

Before modern banking methods and usages were adopted, it might well be claimed that when the petitioner deposited bonds for collection the relationship of principal and agent was created, which continued throughout the transaction. He retained title to the bonds and expected the bank to forward them to some correspondent bank conveniently located to make the collection, which bank would receive upon delivery of the bonds the value thereof in currency; the currency so received to be enclosed in a packet and shipped by express, registered mail or other safe means of conveyance.

In the multitudinous transactions of commercial life, banks came to be universally recognized as responsible and safe mediums for the exchange of credits which became available without the actual transfer of the funds themselves, and the method outlined above was discarded for convenience, expedition, and lessened expense. Such modern usages and customs are tacitly assented to by everyone who makes use of this system of collection unless there is express stipulation to the contrary, and are implicit in the contract to collect and remit. The bank which makes the collection is not required to keep the proceeds segregated as the claimant's property, but may mingle the funds with its own and make itself debtor for the amount re-

ceived. As soon as the proceeds become a part of the funds of the collecting bank under this arrangement, the claimant's right to control it as specific property is gone, and he has instead the right to recover a corresponding sum of money. *Manufacturers Bank* v. *Continental Bank*, 148 Mass., 553, 20 N. E., 193.

The record discloses that the situation as above stated obtained in the present case. While the relationship of principal and agent continued up to the moment of collection, the parties by a reasonable construction of their acts must be held to have contemplated from that time on the relationship of debtor and creditor. *Hecker etc., Milling Co.* v. *Trust Co.*, 242 Mass., 181, 136 N. E., 333; *Central Trust Company* v. *Hanover Trust Co.*, 242 Mass., 265, 136 N. E., 336; *Freeman's National Bank* v. *National Tube Works Co.*, 151 Mass., 413, 24 N. E., 779; *Dorchester & Milton Bank* v. *New England Bank*, 1 Cush., 177; *Lippitt* v. *Thames Loan & Trust Co.*, 88 Conn., 185 at 204, 90 A., 369.

Counsel for petitioner cites *Weed* v. *Railroad*, 124 Me., 336, 128 A., 696, 697; and *Lawrence* v. *Trust Co.*, 125 Me., 158, 131 A., 863; as authority for the view that the original intention of the parties, customer and bank, must control. Nothing contra thereto is herein decided, but, as pointed out in the opinion in the first case, after stating this rule, the court adds: "Of controlling consequence, however, is how the dealing was and not how it might have been" and again, "But the design and meaning of the parties must, in some measure, in every case as to the true purpose of the business, be determined on the circumstances."

This disposes of the first and second legal propositions advanced by the petitioner.

As to the third and fourth contentions:

It is true that there was implied in the contract under which the collection was made that the Ticonic and its correspondent banks should continue in business and if any one of them ceased to do a banking business it lost the power to perform its undertaking when its doors had been closed and it was in the custody of the law. *Manufacturers Bank* v. *Continental Bank*, 148 Mass., 553, 20 N. E., 193.

It is shown, however, that the Fidelity Trust Company received the credit the day before it closed and while it was still operating as a going concern. Nowhere in the record is it shown to have been hopelessly insolvent to the knowledge of its officers. The stipulation in the record states that:

> "For the purpose of this case, both the Peoples Ticonic National Bank of Waterville and the Fidelity Trust Company are deemed to have been insolvent on March 2, 1933, in the sense that neither closed bank on that day could have paid its depositors in full."

The Fidelity Trust Company was functioning in the ordinary course of business when it received the credit from the New York Bank. It was receiving deposits, paying checks and transacting a general banking business in the usual way. This particular collection was complete so far as the Fidelity Trust Company was concerned. The bookkeeping entry made on March 11, recorded only what actually took place on March 3. If technical insolvency existed on March 2, and if that is the criterion by which the transaction is to be governed, then all deposits and all transactions by which the Trust Company became indebted to others, not only on that day but as far back as such actual insolvency could be shown, would be entitled to priority.

Our Court has recently dealt with this question in *Annis* v. *Security Trust Company*, 133 Me., 223, 175 A., 661, 664; where upon abundant authority the Court held:

> "Known simple insolvency, that is, when there is a reasonable hope of a return to solvency at the time of the deposit, is not enough to justify and make equitable the creation of a preference, although the receipt of a deposit even then is reprehensible and most certainly is not to be condoned. But it is only when actual hopeless insolvency obtains, with knowledge thereof upon the part of the officers, that the wrong is so great that there is justification for the establishment of a preference at the expense of the general creditor."

The record in this case fails to charge or impute knowledge of even simple insolvency and much less hopeless, irretrievable insolvency. No fraud on the part of the officers of the Trust Company in receiving the credit can be predicated upon the record.

The petitioner is not entitled to priority. This result may appear to work a hardship in the present instance, but when compelled to the conclusion that the relationship of debtor and creditor was created upon the collection of the funds, then the petitioner finds himself in no worse situation than all other creditors who became losers by the practically unprecedented condition which caused the sudden closing of our banks and the failure of many.

The decree of the sitting Justice is affirmed except as modification may be necessary for appropriate additional instructions to provide for the payment of dividends by the Conservator of the Fidelity Trust Company to the petitioner as a general creditor, accruing subsequent to December 11, 1936, the date of the original decree.

*So ordered.*