No. 15,198.

FIRST NATIONAL BANK OF DENVER *v.* HENNING.

(150 P. [2d] 790)

Decided June 19, 1944.

Messrs. Hughes & Dorsey, Mr. Montgomery Dorsey, Mr. Thomas Keely, for plaintiff in error.

Mr. F. W. Harding, for defendant in error.

*En Banc.*

Mr. Justice Hilliard delivered the opinion of the court.

An action to recover the amount of a cashier's check deposited by defendant in error in the First National Bank of Denver. On a verdict in favor of defendant in error, judgment against plaintiff in error was entered. A motion to set the judgment aside and for judgment in favor of the plaintiff in error, or, in the alternative, for a new trial, was denied. Counsel for the bank in their specification of points assert that numerous errors to its prejudice appear. In our view it is necessary to consider but two of the points raised.

There is no conflict in the evidence. W. F. Henning, plaintiff below, is a resident of Casper, Wyoming. In April, 1941, a brother of Henning, a resident of Denver, opened a checking account for him in the First National

Bank of Denver, and the bank issued and delivered to the brother the form of passbook generally issued to its customers, made out in Henning's name. A few days after the deposit made by his brother, Henning personally deposited the cashier's check here involved, using the form of deposit slip to which we hereinafter refer, and received from the teller a duplicate of such slip. The check was issued by and drawn on the Casper National Bank, was made payable to Henning and was endorsed by him in blank. At the close of the business day on which the check was deposited, the bank, in accordance with its long-standing custom and that of Denver and other banks generally, placed the check and other items drawn on the Casper bank in an envelope addressed to that bank, enclosed the usual "collection letter," affixed the proper postage, and sealed and deposited it in the United States mails. Although there is no direct evidence to that effect, counsel for Henning asserts in his argument, and we will assume, that the check, and the items enclosed with it, did not reach the Casper bank, and were lost in transit. Neither is there direct evidence as to whether the Casper bank would or would not have paid the check if it had been presented, nor is there satisfactory showing that the Casper bank is unwilling to make Henning whole, but we will assume, again adopting Henning's assertions, that the Casper bank would have paid the check on presentation, and that it has refused to make Henning whole unless he shall furnish surety, at considerable expense, and requiring indemnification of the surety in case of loss, by a deposit of cash in an amount in excess of the face of the check. It is plain, however, that the Casper bank received and retains Henning's money in the amount of the check, paid to it when the check was issued, and that the Denver bank has not, and never has had Henning's money or anything but the possession for a time of the check.

The passbook issued to Henning at the time of the

initial deposit contains the preliminary words on the first page thereof, "In Account with W. F. Henning," and the following, concluded on the last page: "All checks, drafts and other items drawn on or payable at other banks are offered for deposit to, and received by, this bank as a forwarding agency and this bank will use diligence in selecting collecting agents but will not be responsible for their acts or omissions, negligent or otherwise, or for loss of items in transit. Such items will be handled at the risk of the depositor, subject to existing or future rules and regulations of The Denver Clearing House Association, of the Federal Reserve Board and/or any Federal Reserve Bank through which forwarded, and will be credited provisionally subject to final cash payment, the bank reserving the right to decline payment of checks drawn against such credits.

"This bank and all intermediate agencies may send items for collection or payment direct to the banks on which they are drawn (or at which payable) or, at its or their option, through any Federal Reserve Bank or to other banks or agencies, may receive payment in cash or in checks or drafts issued by the drawee or other banks and this bank shall not be responsible for the collection of such checks or drafts nor for losses incident to their dishonor. This bank may charge back to the depositor any such item at any time until actual cash payment is received and in like manner may charge to the depositor any unpaid checks or drafts (or interest therein) received in settlement therefor although the item itself is not returned.

"Items drawn on or payable at other banks in this city may be carried over for presentation under Clearing House arrangements or otherwise on business day following date of receipt. Items payable outside of this city need not be forwarded until business day following receipt.

"Items drawn on this bank found not good at close of business on day of deposit may be charged to depositor.

"This account is subject to such charges and conditions as may from time to time be decided upon by The Denver Clearing House Association, or imposed by law.

"The use of this book by a depositor constitutes his assent to the foregoing conditions which shall be applicable to all transactions between the customer and this bank."

On the day Henning deposited the check he signed the form of "signature card" employed by the bank. The card contains, above the signature of Henning, this printed language: "The undersigned hereby assent to the following conditions and regulations which shall be applicable to all transactions between the undersigned and the Bank, viz: That all checks, drafts and other items drawn on or payable at other banks are offered for deposit and received by this bank as a forwarding agency and this bank will use diligence in selecting collecting agents but will not be responsible for their acts or omissions, negligent or otherwise, or for the loss of items in transit. Such items will be handled, at the risk of the depositor, subject to existing or future rules and regulations of the Denver Clearing House Association, of the Federal Reserve Board and/or any Federal Reserve Bank through which forwarded, and will be credited provisionally subject to final cash payment, the bank reserving the right to decline payment of checks drawn against such credits. This bank and all intermediate agencies may send items for collection or payment direct to the banks on which they are drawn (or at which payable) or, at its or their option, through any Federal Reserve Bank or to other banks or agencies, and may receive payment in cash or in checks or drafts issued by the drawee or other banks and this bank shall not be responsible for the collection of such checks or drafts nor for losses incident to their dishonor. This bank may charge back to the depositor any such item at any time until actual cash payment is received and in like manner may charge to the depositor any unpaid

checks or drafts (or interest therein) received in settlement therefor although the item itself is not returned. Items drawn on or payable at other banks in this city may be carried over for presentation under Clearing House arrangements or otherwise on business day following date of receipt. Items payable outside of this city need not be forwarded until business day following receipt. Items drawn on this bank found not good at close of business on day of deposit may be charged to depositor. This account is subject to such charges and conditions as may from time to time be decided upon by The Denver Clearing House Association or imposed by law."

The deposit slip used by Henning in depositing the check bears on its face these words: "All deposits are made and accepted subject to the conditions printed on the back hereof." These printed conditions are as follows:

"All deposits are made and accepted subject to the following conditions which shall be applicable to all transactions between the customer and this bank.

"All checks, drafts and other items drawn on or payable at other banks are offered for deposit to, and received by, this bank as a forwarding agency and this bank will use diligence in selecting collecting agents but will not be responsible for their acts or omissions, negligent or otherwise, or for loss of items in transit. Such items will be handled at the risk of the depositor, subject to existing or future rules and regulations of the Denver Clearing House Association, of the Federal Reserve Board and/or any Federal Reserve Bank through which forwarded, and will be credited provisionally subject to final cash payment, the bank reserving the right to decline payment of checks drawn against such credits. This bank and all intermediate agencies may send items for collection or payment direct to the banks on which they are drawn (or at which payable) or, at its or their option, through any Federal Reserve Bank

or to other banks or agencies, may receive payment in cash or in checks or drafts issued by the drawee or other banks and this bank shall not be responsible for the collection of such checks or drafts nor for losses incident to their dishonor. This bank may charge back to the depositor any such item at any time until actual cash payment is received and in like manner may charge to the depositor any unpaid checks or drafts (or interest therein) received in settlement therefor although the item itself is not returned. Items drawn on or payable at other banks in this city may be carried over for presentation under clearing house arrangements or otherwise on business day following date of receipt. Items payable outside of this city need not be forwarded until business day following receipt. Items drawn on this bank found not good at close of business on day of deposit may be charged to depositor. This account is subject to such charges and conditions as may from time to time be decided upon by the Denver Clearing House Association, or imposed by law."

Statements of account were rendered to Henning by the bank on May 1, 1941, and on the first of each month thereafter until the account was closed by Henning on September 23, 1941. On each of these statements is printed this language: "All deposits are accepted for collection only and credited subject to final cash payment and are handled at risk of depositor. Credit is given conditionally, this bank reserving right to charge back to depositor all unpaid items or returns therefor which are unpaid, although item itself is not returned. Items on this bank not found good at close of business on day of deposit will be charged to depositor. This bank will use due diligence in selecting responsible collecting agents but will not be responsible for their acts or omissions, negligent or otherwise, or for loss of items in mail. Right is reserved to forward items for collection or payment direct to drawee bank."

The check in question was deposited by Henning April

17, 1941, and mailed the same day by the Denver bank to the Casper bank. April 21, the first possible business day, the course of the mails considered, on which the Denver bank could have knowledge the check had not been paid by the Casper bank, it asked the Casper bank for a report on the collection letter covering the check and other items, adding, "Wire if not rec'd." The Casper bank reported that the letter and covered items had not been received, and, April 22 the Denver bank notified Henning to that effect. The Denver bank diligently pursued its inquiries as to the whereabouts of the check, and endeavored, to the best of its ability, to safeguard Henning's interests. April 30, despairing of collection of the check, the Denver bank, after being in communication many times with Henning and the Casper bank, charged the amount of the check against Henning's account, and advised him of its action.

Thereafter, according to Henning's testimony, he obtained an injunction in the courts of Wyoming restraining the Casper bank from paying the proceeds of the check to anyone but him. September 27, 1941, a date subsequent to his withdrawal of all other funds deposited by him in the Denver bank, he presented a check for the amount of the cashier's check to the Denver bank, and payment of it was refused. Thereupon he commenced this action, alleging in general terms the deposit of the check, the credit of his account therewith, and the deduction on April 30, 1941, of the amount of the check from his account, the failure and refusal of the bank to pay him the amount of the check, and prayed judgment for the amount thereof, together with interest from April 30. The bank answered, admitting deposit of the check, but alleging that it was received, accepted and credited, subject to the terms of the pass-book and deposit slip above set forth, and, predicated on the circumstances appearing, denied any indebtedness to Henning. Further answering, the bank alleged that it had handled the check in the regular and usual course

of business, had rightfully charged back the amount of the check, and, the premises considered, had acted in accordance with the general and well-known custom and usage of banks and banking institutions in Denver.

It is to be noted that it was not contended below, nor is it here, that the Denver bank ever became the owner of the check or that its liability was any greater than to use due diligence in endeavoring to collect the amount represented thereby. On the trial, despite the efforts of the bank to confine the issues, the court declined to determine, as a matter of law, whether there was such a custom as the bank contended; permitted testimony as to whether it was negligence to send the check for collection by ordinary, rather than registered, mail; and instructed the jury, in part, as follows:

"It is claimed by the plaintiff that the defendant bank was negligent in its handling of this check, and particularly in its selection of ordianry unregistered mail as the means of forwarding the same for collection to the bank upon which it was drawn, and that but for the negligence of the defendant in its manner of handling the said check the same would not have been lost.

"The defendant denies that it was negligent in the handling or forwarding of said check, and claims that the same was handled in the regular course of business and in the usual and customary manner generally practiced by banks in the receiving, handling and forwarding of such items for collection.

"The Court instructs the jury that the evidence in this case establishes that on April 17, 1941, it was the regular custom and usage of the defendant and of other banks generally to send checks such as plaintiff's Exhibit A for collection by regular mail, properly addressed and stamped. That custom and usage creates a presumption that in mailing the said Exhibit A to the Casper National Bank by regular mail, properly addressed and stamped, the defendant was acting with due care, and that presumption remains with and pro-

tects the defendant until it has been removed by a preponderance of proof. If in your opinion the plaintiff has failed to remove this presumption by a preponderance of evidence, as the court has defined that term for you, then you must find and return your verdict for the defendant; and if, in your opinion, plaintiff has removed such presumption by a preponderance of the evidence, then you must find and return your verdict for the plaintiff.

"It was the duty of the defendant in sending the Casper National Bank cashier's check, plaintiff's Exhibit A, to that bank for collection, to use due care in the handling and transmission of the item. It is for you to decide whether the custom of banks in sending such items as the cashier's check by regular mail, and the defendant's following that custom in this case constituted due care. Due care is that care which an ordinarily careful, intelligent, prudent person should and would normally exercise under like circumstances to those existing here. If you find that defendant exercised that kind of care in handling and transmitting the cashier's check, plaintiff's Exhibit A, you must find and return your verdict for the defendant, and if you find that the defendant did not exercise that kind of care, you must find for the plaintiff and return your verdict in plaintiff's favor."

The principal arguments of counsel for the bank are that the trial court erred in permitting the jury to determine whether the custom followed by the bank constituted due care; that it was the duty of the court, as a matter of law, to determine whether there was such a custom; that if there was such a custom Henning must be presumed to have contracted with relation to it and it became a part of the contract between him and the bank; that since the bank, following the custom, had performed the contract on its part, there was no question of negligence or lack of due care to be submitted to the jury for its determination.

As we have said, the evidence is undisputed as

to the existence of the custom mentioned. All Denver banks follow it, and it was established by the evidence that banks generally throughout the country have adopted it. The custom is based upon the infallibility of the mails, an infallibility which has given rise to the presumption, recognized by this and all other American courts, that when a letter, properly addressed and bearing proper postage, is deposited in the mails it will reach the addressee. The trial court recognized both the presumption and the custom in its instructions, and again, in overruling the bank's motion for a new trial, it found that by abundant and undisputed evidence the custom existed and had been followed by the bank. Notwithstanding, and seemingly only because the letter containing this check was presumed not to have reached the addressee, the court permitted the jury to find whether, in effect, in this particular instance it was negligence not to have employed registered mail as the means of transmission.

■■ It is our opinion the court erred in permitting the jury to pass upon the question of due care. It was the duty of the court to find, on the undisputed facts, that as a matter of law the custom existed, and to determine its legal effect in fixing the rights of the parties. *Hillsburg v. Harrison,* 2 Colo. App. 298, 302, 30 Pac. 355; *Willard v. Mathesus,* 7 Colo. 76, 78, 1 Pac. 690; *Bridgeport Bank v. Dyer,* 19 Conn. 136; *Chicago, M. & St. P. Ry. Co. v. Federal Reserve Bank,* 70 Utah 310, 260 Pac. 262; 1 Morse on Banks and Banking (6th ed.), §221; *Runyan v. Central R. R. Co.,* 64 N. J. L. 67, 44 Atl. 985; 17 C.J. 525, §94; 25 C.J.S. 130, §34. If the court had followed this course, as it should, logically it would have adjudged that the custom became a part of the contract of deposit, and since the bank performed the contract on its part by following the custom, plaintiff had no ground for complaint. See the group of authorities, supra, and *Spokane Valley State Bank v. Lutes,* 133 Wash. 66, 233 Pac. 308; *United States F. & G. Co. v. Forest County*

*State Bank,* 199 Wis. 560, 227 N.W. 27; *Griffin v. Erskine,* 131 Ia. 444, 109 N.W. 13; *Taylor v. First National Bank,* 119 Minn. 525, 138 N.W. 783; *Savings Bank v. National Bank,* 98 Tenn. 337, 39 S.W. 338; *Montana-Dakota Power Co. v. Johnson,* 95 Mont. 16, 23 P. (2d) 956; *Burdick v. Schmitt,* 56 Nev. 229, 48 P. (2d) 762; *Akron Scrap Iron Co. v. Guardian Co.,* 120 Ohio St. 120, 165 N.E. 715; *Cooper, Bank Commissioner v. Fidelity Trust Co.,* 135 Me. 129, 190 Atl. 732; *Jennings v. United States F. & G. Co.,* 294 U.S. 216, 55 Sup. Ct. 394, 79 L. Ed. 869; 5 Zollman on Banks and Banking (Perm. ed.), §2677.

 It will be observed that in some of the cases cited it is held the custom must be not so unreasonable as to conflict with settled principles of law. Whether, in cases where competent parties contract, such a test can be supported we do not determine. It is sufficient to say that the custom followed by the bank in the case at bar is not unreasonable nor is it opposed to settled principles of law; to the contrary, it is based on the universally acknowledged presumption of the infallibility of the mails and is, therefore, in harmony with the law. Cf. *Kershaw v. Ladd,* 34 Ore. 375, 56 Pac. 402.

 In referring to the law with respect to the contract of deposit as affected by the custom mentioned, we have not overlooked the conditions set out in the passbook, the deposit slip, the signature card and the monthly statements above quoted. The case might well be determined upon these alone. The bank was under no duty to accept the deposit of the check or to do business of any kind with the plaintiff. It was within its rights to limit its liability if the plaintiff sought to make use of its facilities for collecting the amount of his cashier's check. We find nothing unreasonable, oppressive or unlawful in the conditions under which the plaintiff tendered and the bank accepted the deposit. Unfortunately for plaintiff, the condition that the bank should not be liable for loss in transit, came into operation. The question simply is whether, the conditions considered, the

bank or plaintiff must submit to loss and inconvenience. The answer must be, and is, that the bank had the right to impose the conditions, the plaintiff made his deposit upon those conditions, and the resultant loss, if there ultimately be any, must fall upon him. See, *First National Bank v. Fleming State Bank*, 74 Colo. 309, 312, 221 Pac. 891. It follows that the court erred in submitting the case to the jury. It should have granted the bank's motion for a directed verdict and, failing that, should have sustained its motion for judgment under Rule 50, R.C.P. Colo. That the proper orders may be entered, let the judgment be reversed.