No. 16,841.

YOUNG *v.* McLAUGHLIN.
(247 P. [2d] 818)

Decided August 4, 1952.

· Mr. EARL J. HOWER, Mr. HAROLD H. HARRISON, for plaintiff in error.

Mr. MARVIN G. ROSENBAUM, Mr. THOMAS E. KELLY, for defendant in error.

*En Banc.*

MR. JUSTICE ALTER delivered the opinion of the court.

WILMA CRIM McLAUGHLIN, the mother of Diane Kay Crim, a dependent child, filed a petition in the Juvenile and Family Court seeking an order awarding her the custody of her child, which custody had theretofore and on July 9, 1948, been awarded to Helen Young, the child's maternal grandmother, in whose custody the child had remained until the 21st day of February, 1952. The custody of the child was awarded to its mother for a short period of time provided that it remain in the home of its maternal grandmother, and provided further that the mother of said child pay to the maternal grandmother the sum of thirty dollars per month for its support and maintenance. At the conclusion of the hearing the petition was granted, an order or judgment effectuating the same entered, and motion for new trial found unnecessary. Helen Young, the maternal grandmother, is here by writ of error seeking a reversal of the judgment.

In the petition filed by Wilma Crim McLaughlin she alleged that she had remarried and was now the wife of one Thomas McLaughlin, a sergeant in the United States Army, who is stationed at Fitzsimons. Petitioner and her husband and infant son reside in Fitzsimons Gardens, in Aurora, and they have adequate housing with which to provide for their family as well as the dependent child, and Thomas McLaughlin, petitioner's husband, is willing to welcome the child into his home and provide it with all necessary support. It further was alleged — on information — that petitioner's father, the husband of Helen Young, is suffering from a heart ailment that prevents him from being gainfully employed, and that Helen Young is employed in a restaurant; that during the time Helen Young is so employed the child is intrusted to the care of her maternal grand-

father. Further, it is alleged that the grandparents of the child are not mentally or physically capable of rearing the child with proper love, affection and parental supervision.

At the hearing a probation officer of the Juvenile and Family Court testified as to the housing and other conditions under which the child was being reared and also as to the housing and other conditions under which the child would be cared for if its custody was awarded to petitioner. According to his testimony, there was no objection whatever as to the care and attention given the child by its maternal grandmother, and he did testify that the child was being properly cared for, neatly clothed, and had adequate and proper housing conditions in the home owned by the child's grandparents. He also testified that the petitioner's home was neat; their infant son properly cared for; and that petitioner's housing facilities were adequate.

In the petition the allegation as to the grandfather's physical ailment is based upon information, as likewise is the intrustment of the child's care while the maternal grandmother is employed. The positive and uncontradicted testimony is that when the maternal grandmother is absent from her home the child is not intrusted to its maternal grandfather's care but to a neighbor or others who take charge of the child during the enforced absence of the maternal grandmother, which generally is in the hours between ten o'clock P.M. and two o'clock A.M., when the child is sleeping.

Over the objection of petitioner, the court permitted the hospital records of petitioner, made in July and August, 1948, and in June and July, 1950, to be introduced in evidence. These records contain a life history of petitioner as narrated by her and others, as well as her statements as to the condition, physical and mental, of her parents. The sordid details of these exhibits need not be related here. The information therein was either

confidential (section 9, chapter 177, '35 C.S.A.) or hearsay; in either event inadmissible.

At the conclusion of all of the evidence, the trial court entered the following order, which, omitting the formal parts, reads:

"And thereupon comes the further hearing to the Court concerning custody of Diane Kay Crim, the child involved herein. At the conclusion of which, it is ordered by the Court that said child be placed in the legal custody of the Juvenile and Family Court, until the further order of the Court herein;

"And it is further ordered by the Court that said child be permitted to live with mother respondent, Wilma McLaughlin, until the further order of Court *on such terms and conditions as shall be prescribed by the Probation Officer of this Court;*

"And it is further ordered by the Court that the said Wilma McLaughlin, respondent mother, be restrained from removing said child from the State of Colorado without the specific permission and order from this Court;" (Italics ours)

The points urged for reversal are four in number, and all thereof specify error in the court's order changing the custody of the dependent child from Helen Young to the petitioner.

Section 12, chapter 33, '35 C.S.A., concerns the guardianship of a child taken into custody and found to be dependent. This section authorizes the court to determine in whose custody a dependent child shall be placed, and the conditions under which the child shall be nurtured and maintained. It also contains a provision that, "The Court may change the guardianship of such child if at any time it is made to appear to the court that the same is detrimental to the child or unsatisfactory to the court."

The custody of a dependent child once having been awarded, the only authorization for a change in its custody is that provided in the sentence hereinabove

quoted. In essence it is the best interest of the child which is of paramount importance.

Directing attention to the order or judgment entered by the court and hereinabove set forth, it will be observed that there is no finding by the court that the conditions under which the dependent child is now being cared for were shown to be in any manner "detrimental to the child or unsatisfactory to the court," and for aught that appears in the order or judgment, the custody of the child is changed entirely upon the request of the petitioner without any court finding whatever. Upon adjudication of dependency, the right of the parents to custody and tuition are lost, and the desires and wishes of the parents become subordinate to the court's determination as to what order of custody will be for the dependent child's best interest. The custodial order here in effect since July 20, 1948, should not be disturbed unless for good cause shown. Its disturbance should be on some positive finding that the best interests of the dependent child demand a change, and then, and only then, is the court authorized to order a change of custody. When custodial conditions are such as to be detrimental to the child's best interests, then they must be "unsatisfactory to the court" and, conversely, when the custodial order is for the best interests of the dependent, then, perforce, it must be satisfactory to the court.

In *Murley v. Murley,* 124 Colo. 581, 239 P. (2d) 706, in connection with said section 12, and particularly the portion thereof hereinabove quoted, we said: "Upon adjudication of dependency, all right of the parents as to custody is lost. The child may be committed to the state home or to any other custodian as may be determined by the court. If it is assigned to a parent, the parent acts not as such, but as a representative of the state, and is subject to visitation or inspection by the State Bureau of Child and Animal Protection, the State Board of Charities and Corrections, probation officers, or any person appointed by the court for such purpose;

the court may require reports as to the care and training of the child, as well as of ability to care for it; the court may impose conditions for the care of the child or may change its guardianship if at any time it is made to appear that the same is detrimental to the child or unsatisfactory to the court."

It also should be noted that in the final order or judgment herein the custody of the child is awarded to its mother and must be maintained "on such terms and conditions as shall be prescribed by the Probation Officer of this Court." It is for the court itself, and not for the probation officer, to prescribe and determine "what the terms and conditions" are under which the child shall be maintained by its custodian and to make the same specific in its order or judgment.

No cross specification of points is filed by Wilma Crim McLaughlin, but on a retrial of this matter, and in order to prevent further error in connection therewith, the hospital records marked herein as Exhibit A and B, to which reference has hereinbefore been made, should not be admitted in evidence. At the time of the admission of these exhibits it was said that they were offered for the purpose of impeachment; they were, as we have said, either confidential records or hearsay, and in either event were inadmissible for impeachment or any other purpose.

The order and judgment is reversed and the cause remanded with instructions that further proceedings herein shall be in conformity herewith.