## No. 17,564.

WRIGHT *v.* THE PEOPLE IN THE INTEREST OF
MARTHA VICTORIA ROWE ET AL.
(279 P. [2d] 676)

Decided January 31, 1955.

Mr. LLOYD E. WILLIAMS, for plaintiff in error.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK A. WACHOB, Deputy, for defendant in error.

*En Banc.*

MR. CHIEF JUSTICE ALTER delivered the opinion of the Court.

A petition in dependency was filed in the County Court of Clear Creek county by Florence Vorenberg, Director of the Clear Creek County Department of Public Welfare, by which it was sought to have Martha Victoria Rowe and Margaret Elizabeth Rowe adjudged to be dependents. Florence P. Wright was named as respondent in the petition; citation was served on her in Larimer county, and her answer to the petition was filed. Upon trial it was adjudged that the children were dependent and neglected children "and that they be placed under the custody and care of the Clear Creek County Department of Public Welfare, for adoption." The parent, Florence P. Wright, brings the cause here by writ of error seeking a reversal of the trial court's judgment and order.

Respondent mother of the children in her answer attacked the jurisdiction of the county court of Clear Creek county to entertain the dependency proceeding because of the fact that in a divorce decree entered in her favor by the county court of Larimer county, Colorado, on June 5, 1948, the court ordered, adjudged and decreed that "The sole care, custody and control of the minor children, Margaret Rowe, approximately of the age of five years, and Martha Rowe, approximately of the age of three years, with the right of visitation by plaintiff at reasonable hours and reasonable times be and the same is hereby awarded to James E. Rowe, the defendant herein, until the further order of this court in the premises."

The county court of Clear Creek County, in its judgment and decree, found:

"First, that the children were properly awarded to James E. Rowe, that the children were proper residents of the County of Clear Creek at the time said James E. Rowe relinquished custody of said children to the Clear Creek County Department of Public Welfare.

"Second, That no further orders or amendments to said decree had been made or entered by the County Court of

Larimer County; that the respondent by virtue of said decree had lost all rights to the custody of said children."

The evidence offered was in support of respondent's objection to the jurisdiction of the Clear Creek county court in the dependency proceeding, but, as will appear hereinafter, was almost exclusively directed to the question of dependency which respondent, in her answer, had specifically denied so far as it related to her.

Respondent testified that subsequent to the year 1946 the children were in the custody of their father, who took them from her while she and he were in Pueblo, Colorado, and that thereafter and until September, 1951, she never saw the children and knew nothing about their whereabouts. In the meantime, and in June, 1948, she was divorced from the father of the children, and in October, 1951, remarried. In September, 1951, she received a letter from the sister of her former husband, advising her that the children were in Leadville, Colorado, and respondent immediately went to Leadville to see and visit with them, at which time her sister-in-law agreed to keep her informed of the children's whereabouts. However, upon letters being addressed to the sister-in-law in Leadville, the same were returned with the notation that she had moved and left no forwarding address. The mother thereafter knew nothing of the whereabouts of the children and had no word concerning them except a letter postmarked Dickson, Wyoming, with no other address or information concerning the children. She attempted an arrangement with an attorney to learn of the whereabouts of the children and regain their possession, but failed because she was unable to make a satisfactory financial arrangement for the service. She further sought the services of the Welfare Department of Larimer county, Colorado, in her search for her children, but was unsuccessful in obtaining the same; likewise she sought the assistance of a second attorney, but without success. She finally learned of the children's

whereabouts on August 11, 1954, "When a woman welfare worker came up with papers to be signed to have them adopted out or put in a home," which request for signature she refused. On the 17th of August, 1954, it appears that the petition in dependency was filed in the county court of Clear Creek county, and notice of same was served on respondent in Larimer county on the 19th day of August, 1954. Trial was set for, and occurred, on August 20, 1954, prior to which time respondent had filed a petition in the county court of Larimer county requesting that court to award her the custody of the children involved in the present proceeding.

At the court's request, respondent was further examined and testified that she and her husband were living in their own home, west of Fort Collins; that the home consisted of three rooms connected, with a small room a short distance from the house; that they had two children, and her husband was steadily employed and was paid $158.00 to $160.00 every two weeks; and that he desired to adopt the two children if given an opportunity to do so. The husband's acknowledged letter requesting the care and custody of the children be given to his wife, and his agreement to maintain and support them, in which he also stated that he was steadily employed and had been continuously employed by the same employer for almost thirteen years, and that he and his wife were purchasing their own home on an acre of land west of Fort Collins, was offered in evidence but denied admission.

Two friends and neighbors of respondent testified that she had a motherly interest in the children now living in her home; took proper care of them; and in every respect was a good mother.

At the conclusion of the evidence offered by respondent, two witnesses were called in support of the dependency petition; one thereof being petitioner, Florence Vorenberg, and the other Florence Humphrey, who was

consultant for the Child Welfare Division of the State Department of Public Welfare.

Mrs. Vorenberg testified that she first learned of the children in August, 1953, when their father, James Rowe, requested the Clear Creek County Department of Public Welfare to assume custody of his children. She assumed custody, placed the children in a foster home, and the father having disappeared, she learned of his whereabouts through the Welfare Division. Upon his return to Clear Creek county from Naturita, Colorado, he signed a "Petition for Relinquishment" on December 9, 1953; on the 19th day of December, 1953, an interlocutory "Order of Relinquishment" was entered by the court; and on January 20, 1954, the court signed a "Final Order of Relinquishment."

At the request of counsel appointed to represent the People, the court produced its records over the objection of respondent's counsel; permitted witnesses to read and testify from reports therein; and over further objections, took these records into consideration.

Mrs. Vorenberg testified that she was familiar with the court's record on "Relinquishments" and had in her possession the final order thereon; that she had records in her possession that indicated that some welfare agency had contacted the community in which respondent resided on two previous occasions; that in August, 1944, it was *reported* to her that a dependency case had been brought; and that as a result thereof Mr. Rowe, the father of the children, "Had agreed to place the children in a home for care." Respondent's counsel objected to this evidence as being hearsay and continued his objection to the testimony hereinafter set out. The witness then testified that she had a *report* of other *investigations* made by the Welfare Department in which it was *reported* that respondent, in December, 1946, had *stated* to the investigator that she had taken the children to their father in Canon City. A further objection to hearsay evidence was interposed, to which the court, in

overruling it, stated that it was a "pretty fine point." In this report it further was *stated* that "Mrs. Rowe said that she did not want the girls and preferred that they live with their father." Objection on grounds of hearsay again was overruled. According to this witness an *investigator* of the Welfare Department *contacted* respondent in 1953 with reference to the dependency of the children. When asked if the witness had made any effort to contact respondent at the time of the relinquishment proceedings, she replied, "After we had the children *evaluated* we tried to determine what was best for the children, then we requested, with the background we had, the said Child Welfare Division through Larimer County, Colorado, that Mrs. Rowe be contacted and asked if it would be agreeable to her to relinquish the children."

Mr. Jones, attorney for the People, then asked the witness:

"Q. At the time of the filing of this petition [relinquishment] on the 9th of December, 1953, the relation to the interlocutory decree, you were unable to contact Mrs. Rowe? A. As I remember correctly the father *requested* if they could be kept in a foster home where they would have some advantages *that the mother not be contacted.*

\* \* \*

"Q. Have you investigated the character of the mother insofar as by your various welfare workers? A. I do have a *report.*

"Q. Is that report favorable? A. No, sir." (Emphasis ours.)

The witness, on being asked to produce the report, testified: "This *report* was made by Larimer County Department of Public Welfare and sent to John Dunn, the acting director of the Colorado State Department of Public Welfare, attention of Miss Marie Smith, the director of the Child Welfare Division, and it was to be referred to Mrs. Wanita Perkins, supervisor, Child Wel-

fare consultants and it is marked *confidential*." (Emphasis ours.) Counsel interposed an objection to this testimony which the court ruled upon as follows: "Objection sustained it is confidential. I think pertinent facts can be brought out without that.

"Mr. Jones [continuing]: In making this *report* Mrs. Vorenberg, does this *report* you have cover an investigation of Mrs. Wright's standing in the community and her moral and physical characteristics and character? A. Yes sir." (Emphasis ours.) Objection overruled and continuing objections allowed. "Q. Did Mrs. Wright make any *statements* to the *welfare worker* in connection with the custody of the children? A. Yes sir. Q. What are those statements? A. *She recognized the physical limitation of their home precluded any immediate plan. She further stated that if and when she could take the girls into her home she knew they would not respect her but that it would take a few beatings and strappings, etc. but they would learn to respect her.* Q. Did she [the investigator reporting in a confidential report] make further *observation* as to herself and as to the question of the proper surroundings of the children were they returned to the mother and were there proper conditions there for a proper home atmosphere for the children? A. She stated '*We definitely feel that under no circumstances could we recommend this mother for the children. In the first place the home condition was deplorable. There are three small rooms, housekeeping standards are extremely low and the general condition was one of disorder and extreme filth. One of the rooms is used as a kitchen, the other is used for a combination living room, dining room and children's bedroom and the third small room is the parent's bedroom. The home is located in a very undesirable section. School facilities are near at hand. It is located in a low income submarginal community of Ft. Collins.*" (Emphasis ours.)

Motion to strike the quoted portion from the record was denied.

After testifying that the younger girl was in a satisfactory home and application had been made for her adoption, with reference to the older girl the witness testified: "Q. The other child is in a proper home where there is possibility of adoption? A. At this time the *psychologist recommended* that she was not fit for adoption. * * * Q. You feel from your investigation of the facts and the *reports of the welfare workers* to your office that it would be improper to turn the children back to their normal mother? A. We have questioned the advisability of keeping the two children together and the *psychologist* at the University of Colorado Medical Center *recommends* that these children be separated; that it is a very unusual feeling that exists between them." (Emphasis ours.) An objection to this testimony also was overruled.

The witness was asked if the children were, at the time of the trial, in Clear Creek county, to which she replied that they were. "Q. Will you state where they are in Clear Creek County? A. No sir."

Upon counsel's insistence that the question be answered, the court ruled that the witness need not answer, and an exception was saved to the ruling. Respondent's counsel, on cross-examination, then interrogated the witness as follows: "Q. Mrs. Vorenberg, with regard to the so-called relinquishments it is a fact that Mrs. Wright was not communicated with in that matter by your department? A. That is right. Q. You did not communicate? A. That's right. Q. Is it correct that you did not communicate with her because Mr. Rowe requested you not to do so? A. That is part of it sir. Q. Between the period of August 2, 1953, when these children were delivered into your care, and the 11th day of August, 1954, which is the testimony of Mrs. Wright to your department, so far as your knowledge extends, she has not been communicated with? A. That's right.

* * *

* * * The Court: Did Mrs. Wright ever write to the De-

partment asking where the children were or wanting to know anything about them during that period? A. No sir."

Florence Humphrey testified that she was the consultant for the Child Welfare Division, State Department of Public Welfare, and matters pertaining to delinquent children came under her supervision in thirteen counties, of which Clear Creek was one. She further testified that after the relinquishment of the children by their father to the Welfare Department, they were sent to the Colorado General Hospital for hospitalization and examination. When asked to state to the court what the physical condition of the children was when they were turned over to her and what was done in regard to them, she said: "Well they came in in June for some surgery when it first came to our attention, and following the physical care they were sent to a *psychologist*, and her *reports indicated* that due to the type care, physically, it had affected them very seriously, and there is some question as to whether they will ever be considered normal. *They must have been deprived and mistreated from the time they were very small.* Q. Have you had occasion to see those *reports* regarding the *investigation* of Mrs. Rowe in Larimer County? A. Yes. Q. After seeing those *reports* that were made by *investigators* of the welfare department, would it be your recommendation that the children be returned to their natural mother?" An objection was interposed.

"Mr. Jones: The *reports* were to her and were made by *qualified investigators* and I am asking her for her conclusion if she would recommend the return of the children to the natural mother and talking to the doctors and psychologists?

"The Court: You may answer.

"A. From my own experience, because I have been in touch with the children once or twice a week, I have to consider their welfare first, and my first responsibility is to the children, and I cannot recommend that they be returned under those circumstances. Q. You say the

children are making definite progress? A. They have quite a way to go but they are improving."

At the conclusion of the testimony the court stated: "The court will rule that the custody of the children will be vested in the Clear Creek County Welfare Department. I will declare them dependent children and the custody is awarded to the Clear Creek County Welfare Department; that is the ruling of the Court. If counsel wishes to proceed further and can set that aside that will be perfectly all right. My sole interest in this is for these children. I feel for the parents naturally, but my actual feeling is for these children and where they would be better off and it would appear from what the Court *knows* and their *proceedings,* etc., and *investigations,* things that *came up before the Court,* and I know *they are authentic,* I certainly feel that the children, where they are, are far better off than if custody is returned to Mrs. Wright." (Emphasis ours.)

Quotations and excerpts from the evidence before the court have been made for the purpose of showing the character of the evidence upon which these children were found to be dependent and neglected children as indicated by the court's findings hereinbefore set out.

█ There were consistent objections made to this hearsay testimony, and all thereof were overruled, specifically or in effect. The court's remarks hereinbefore quoted clearly indicate that it was construing and relying upon the testimony of investigators contained in their reports, with no opportunity for cross-examination afforded respondent's counsel.

In *Bailey v. Bullock,* 110 Colo. 205, 132 P. (2d) 783, this Court said: "Counsel for defendant in error seems to be of the opinion that practice in the juvenile court does not require observance of the ordinary rules of evidence. The same opinion was entertained by a former distinguished judge of the juvenile court who appeared before us as amicus curiae in the case of *Board of Control of State Home v. Mulertz,* 60 Colo. 468, 154 Pac. 742,

and contended that 'the matter of procedure cuts but little, if any, figure.' We said then, and repeat here: 'The relation of remedies to right is fundamental and cannot be disregarded at will. Whosoever exercises power in a government of the people, for the people, and by the people, whether the power be executive, legislative or judicial, must do so in substantial compliance with the rules prescribed, or his action in the premises is unlawful.' The constitutional provisions and statute relating to juvenile courts, in no way exempt or excuse contending parties from 'substantial compliance with the rules prescribed.' "

As was stated with reference to a similar situation in *Young v. McLaughlin,* 126 Colo. 188, 247 P. (2d) 813, evidence contained in their hospital records was inadmissible for any purpose, and in ruling otherwise prejudicial error was committed.

Ordinarily, we would dispose of this case by remanding it to the lower court for a retrial and the admission of proper evidence, but such disposition would not be proper under the petition in dependency filed in the instant proceeding. The children are alleged to be dependent and neglected children for the following reasons: 1. Dependent upon the public for support. 2. Dependent, homeless and abandoned. 3. No proper parental care. 4. Failure and refusal of their parents to support or care for them. 5. Improper environment. 6. The final order of relinquishment by the father. 7. The mother has not had custody for several years and relinquished custody to the father, and she has not had charge or control of them since 1946 and has not contributed to their welfare since 1946.

Allegations 1, 2, 3, 4 and 5 are all in the present tense. Allegation 6 in nowise relates to any act or neglect of respondent; allegation 7 is not supported by any evidence whatever; but all the evidence in the record pertaining to this allegation is in direct refutation thereof.

The admitted evidence in the case is that: Since

August 2, 1953, the children have been in the custody, care and control of the Clear Creek County Department of Public Welfare; that neither of said parents has contributed to their support since the above date. The evidence of Mrs. Vorenberg is that Rowe, the father of the children, delivered the custody thereof to her in August, 1953, and requested her not to inform the mother of the children's whereabouts, and his request was respected. As a result, respondent was not aware of the whereabouts of her children from September, 1951, until August 11, 1954, when she was requested to sign a relinquishment. Nevertheless the mother is charged with failing and refusing to give her children proper parental care, and this during a period when their whereabouts were concealed from her. There was no opportunity given this mother to exercise or exhibit a parental interest in her children, and she cannot be charged with contributing to their dependency or delinquency unless their whereabouts were known to or could have been ascertained by her, and this lack of ascertainment, according to the undisputed evidence, was not properly chargeable to the mother. If records in relinquishment and dependency matters are to be held confidential, then neither the parties to such proceedings nor the court may be permitted to consider their contents for any purpose whatever.

█ The undisputed testimony in this case, as disclosed by the record, is that the mother knew nothing of the whereabouts of her children from September, 1951, until shortly before the filing of the petition in dependency on August 17, 1954. Mrs. Vorenberg, the petitioner, at the request of the children's father, conspired with the father to withhold this information from respondent. It is obvious that respondent could not be chargeable with any dereliction in parental care of the children until she knew of the children's whereabouts. The "Petition in Relinquishment," executed by the father of the children, under the circumstances presented in no-

wise affected the rights of respondent, and no neglect or inattention alleged in the petition in dependency could, under any circumstances, be chargeable to this parent, who now is entitled to the custody of the children. The record is devoid of any competent evidence that respondent is not a fit and proper parent to have the custody and care of her children, and, until such evidence is produced, she has a prior right to such custody. *Everett v. Barry,* 127 Colo. 34, 252 P. (2d) 826. If, upon custody being awarded her, the mother fails to give the children the parental care and attention necessary to afford them a normal childhood, that is a matter for the attention of the trial court in further dependency proceedings. Until a proper petition in dependency is filed, and supported by competent evidence, the respondent herein is entitled to the care, custody and control of these children.

The judgment of the trial court is reversed and the cause remanded with instructions to dismiss the proceedings and forthwith order the children, Martha Victoria Rowe and Margaret Elizabeth Rowe, delivered to their mother, the respondent in the proceedings.