No. 18,540.

RONALD OLSEN *v.* MILDRED VIVIAN DAVIDSON, ET AL.

(350 P. [2d] 338)

Decided March 21, 1960.

Messrs. ADAMS, HECKMAN, TRAYLOR & ELA, Mr. IVAN P. KLADDER, for plaintiff in error.

Mr. C. V. MARMADUKE, for defendants in error William A. Taft and Charlene Taft.

Mr. WILLIAM ATHA MASON, for defendants in error Mildred Vivian Davidson and Robert Junior Davidson.

*In Department.*

Opinion by MR. CHIEF JUSTICE SUTTON.

PLAINTIFF in error Olsen was plaintiff in the trial court where he had filed motions to void adoptions of his three children by two couples, the Davidsons and the Tafts, who are the defendants in error. We will refer to the parties by name or as they appear before us in this proceeding.

While Olsen was on active duty overseas with the United States Navy his three children were declared dependent and neglected in the County Court of Garfield County, Colorado. Some two months later, in June of 1953, by virtue of two separate adoption proceedings in the same court, two of the children were adopted by the Tafts and one by the Davidsons.

Olsen was discharged from the Navy in 1956, and approximately one year later, in September of 1957, filed his separate motions to set aside the adoption orders. After hearing, the trial court denied the relief sought, which rulings are now urged as error.

The entire dispute here revolves around the point as to whether Olsen had sufficient legal notice or knowledge of the abandonment and needs of his children and of the dependency proceeding which took place prior to the adoptions. It is admitted that no notice of the adoption was given to Olsen and defendants in error correctly state that none was required under our statute in a case where the parents have waived or lost their rights by prior court action. (C.R.S. '53, 4-1-6 (2) (b) ).

Prior to the institution of the dependency proceeding

the record shows that Mrs. Olsen had abandoned the children in Denver and they had later been taken by other persons to Mrs. Margaret Stern's home in western Colorado. This lady was Olsen's mother-in-law and she then wrote him at the same address where the citation and judge's letter were later sent and advised him of the destitute and abandoned status of his children. In response thereto on January 31, 1953, Olsen wrote Mrs. Stern and stated that he appreciated her help and would change his allotment to her and send what other money he could to help care for the children. The grandmother, who was not in good health and being in poor financial circumstances and failing to receive any money or further directions from Olsen had him contacted again and with American Red Cross aid he was given an extended emergency leave to come from Guam to Colorado to take care of his parental obligations. It is undisputed that upon arrival at the Naval Station at Treasure Island in San Francisco Bay, Olsen failed to continue his journey. In fact he refused to call Mrs. Stern or his wife who had then tried to call him from her mother's where she had appeared for a few days. Later, the Red Cross prevailed upon him to call Mrs. Stern. In this connection we note that the record is replete with copies of Red Cross telegrams demonstrating that all possible aid was offered to Olsen to aid him in returning to Colorado and to help in solving his problem. He chose, however, to visit his mother in Southern California and told Mrs. Stern by telephone, when he returned to Treasure Island, in response to her admonition that she could not take care of his children and had to know "what to do with them," that "there was nothing he could do about it; that his leave was up and that I could do just as I saw fit."

Admittedly Olsen was in California for seventeen days on this emergency leave which was granted so he could see and care for his children and it is obvious that he utterly failed to do anything about them or to come to Colorado though urged by all concerned to do so.

Following these frustrations Mrs. Stern, being, as stated above, unable financially or physically to care for the infants, proceeded with Mrs. Olsen's written consents and waivers to initiate the dependency proceedings in question.

As to the notice and knowledge of Olsen relating to the dependency proceedings the record before us shows not only the above history but also that in April 1953 he was notified of the hearing by regular mail directed, postage prepaid, to his proper address. First the district attorney, who handled the matter, sent him a citation which gave the requisite notice including time and place of the hearing; then the trial judge before whom the hearing was to be held wrote Olsen on April 1, 1953, explaining the hearing was set and that he should appear to protect his rights and ask for a continuance if he desired.

The undisputed evidence is that the reason for using regular mail was that the local postoffice authorities had advised the senders that registered return receipt mail could not be sent via a fleet postoffice, and this information was then acted upon. In any event the rule, properly applied here, is that mail is presumed to have been received by its addressee when there is proper evidence of its mailing to a named person at a correct address, with adequate prepaid postage. Olsen's mere denial of its receipt under the facts related herein did not rise to the dignity of a bona fide rebuttal of this presumption.

When viewed in the light of the testimony, coupled with the service of notice of the hearing by mail upon Olsen, supplemented by the judge's letter to him, it is apparent that Olsen had in fact received actual notice of the hearing. Moreover prior to receiving that notice he had, in addition, effectively waived his right to notice and deliberately abandoned his children. His denial, over three years later at the 1957 hearing to set aside the adoptions, that he knew about the dependency proceeding having been held, has an obvious hollow

ring. We find there is substantial evidence to support the findings and judgment of the trial court.

■ This court has twice held in recent years that once a valid dependency decree has been issued in accordance with the statute (C.R.S. '53, 22-1-4) the parents affected thereby are thereafter legally deprived of their parental rights. *Murley v. Murley* (1951), 124 Colo. 581, 586, 239 P. (2d) 706, and *Young v. McLaughlin* (1952), 126 Colo. 188, 192, 247 P. (2d) 813.

■ Having had notice, Olsen's right to contest the decrees involved is barred by the statute which limits the right to challenge a valid decree to two years after entry. C.R.S. '53, 4-1-16. Nor is he aided by the Soldiers' and Sailors' Civil Relief Act of 1940 (50 U.S.C.A. App. §525) because of the showing here made of service upon him and the convincing evidence of waiver of his rights.

The judgment is affirmed.

MR. JUSTICE KNAUSS and MR. JUSTICE HALL concur.