## No. 26209

## The People of the State of Colorado v. Clinton Todd and Thaylen Todd

(538 P.2d 433)

Decided July 14, 1975.

John P. Moore, Former Attorney General, John E. Bush, Former Deputy Attorney General, J. D. MacFarlane, Attorney General, Jean E. Dubofsky, Deputy, James S. Russell, Assistant, Edward G. Donovan, Solicitor General, for plaintiff-appellee.

Rollie R. Rogers, State Public Defender, James F. Dumas, Chief Deputy, Mary G. Allen, Deputy, for defendants-appellants.

*In Department.*

Opinion by MR. JUSTICE ERICKSON.

Defendants, Clinton and Thaylen Todd, were convicted by a jury of theft by deception (1971 Perm. Supp., C.R.S. 1963, 40-4-401) [1] and conspiracy to commit theft (C.R.S. 1963, 40-7-35). [2] On appeal, the defendants assert as error: (1) The admission of a purchase refund check and testimony relating to a telephone call. (2) Violation of their right to remain

---

[1] Now section 18-4-401, C.R.S. 1973.
[2] Now section 18-2-201, C.R.S. 1973.

silent by the prosecuting attorney's statement on closing argument that the evidence was uncontradicted. (3) Sufficiency of the evidence. Reversible error does not appear in the record, and we, therefore, affirm.

At the conclusion of the prosecution's case, the defense rested. The evidence which was before the court and the jury was that the defendants purchased a sofa at Sears, Roebuck and Company on October 27, 1971. A check for $308.95 was tendered in payment for the sofa. The check was drawn on the defendants' joint account at the First National Bank of Arvada and was signed by Thaylen Todd. The prosecution also proved that the defendants' account at the First National Bank of Arvada had been closed on August 6, 1971. On October 28, 1971, the Todds returned to Sears, cancelled their purchase of the sofa, and asked for a refund. They were referred to Robert Winzurk, the Customer Service Supervisor, who offered to make a refund by check, but was told by the Todds that they wanted cash. Clinton Todd told Winzurk that the check which had been tendered in payment for the sofa had been drawn on the Broomfield Bank. Winzurk telephoned the Broomfield Bank and was informed that there were not sufficient funds in the Todds' account to cover the purchase of the sofa. Winzurk relayed this information to Todd, who stated that there were probably not funds in the account to cover the check, but told Winzurk that additional funds would be deposited. Winzurk and the Todds then agreed that Sears would issue a refund check to the Todds when a deposit was made and Sears was advised of the deposit.

According to Winzurk's testimony, he received a telephone call a few days later from a person who said he was a representative of the Broomfield Bank and that there were sufficient funds in the Todds' account to cover the check to Sears. Based upon the telephone call, Winzurk signed the refund credit slip and authorized the issuance of a refund check to the Todds. The refund check was issued on November 11, 1971, and mailed to the Todds' home address. Subsequently, the Sears' check was cashed.

Thereafter, the check which the Todds had given to Sears was not honored by the First National Bank of Arvada and was returned to Sears. The Security Manager at Sears wrote two letters to the Todds requesting the Todds to pay Sears the amount which they had received from Sears. Sears received no response.

I.

## Admissibility of Evidence

*The Sears Check*:

■ The check was a crucial part of the prosecution's case and was necessary to establish control over the money by the Todds, which was a relevant and material part of the deceptive scheme. 1971 Perm. Supp., C.R.S. 1963, 40-4-401.[3] The defendants assert that a proper foundation

---

[3]Now section 18-4-401, C.R.S. 1973.

was not laid for the admission of the Sears refund check. The check was payable to Clinton Todd and bore his endorsement. Karen Wessles, a cashier for Sears, testified that she issued and signed the check and mailed it to the home address which the Todds provided. She also established that it was cashed and returned to Sears in the ordinary course of banking. A sufficient foundation was, therefore, laid for the check's admission.

■ Although no handwriting expert was called by the prosecution, the authenticity of Clinton Todd's endorsement on the reverse side of the check was not contested. Control over the money can be inferred from evidence that the check was mailed to the Todds' home address in the usual course of business. See *Olsen v. Davidson*, 142 Colo. 205, 350 P.2d 338 (1960); *First National Bank v. Henning*, 112 Colo. 523, 150 P.2d 790 (1944); *National Motors v. Newman*, 29 Colo. App. 380, 484 P.2d 125 (1971); 1 *J. Wigmore, Evidence* §95 (3rd ed. 1940).

Moreover, signature cards, which had been signed by the Todds at both the First National Bank of Arvada and the Broomfield Bank, were admitted into evidence, and the jury had the check with its endorsement and the signature cards for consideration when the verdict was reached. *See* C.R.S. 1973, 13-25-104; *Lewis v. People*, 174 Colo. 334, 483 P.2d 949 (1971); *Wilson v. Scroggs*, 85 Colo. 537, 277 P. 784 (1929).
*The Telephone Call*:

■ The defendants claim that it was error to permit Robert Winzurk to testify as to a telephone call which he received and which caused him to authorize the issuance of the refund check. The defendants claim that the testimony as to the telephone call constituted hearsay and that the failure to identify the person who made the telephone call was fatal to the admissibility of the evidence. In our view, the defendants' contention is without merit.

The identity of the person making the telephone call was irrelevant. The testimony was offered to establish that a call had been made which affected the subsequent action of the witness, rather than to establish the truth of the matters asserted in the telephone call. It was, therefore, not hearsay, and the identity of the caller was not an issue. *See* 2 *F. Wharton, Criminal Evidence* § § 265, 274 (13th ed. 1972). *See also People v. Lyles*, 186 Colo. 302, 526 P.2d 1332 (1974).

## II.

### Prosecutorial Reference to Evidence as Uncontradicted

■ The prosecution, in a closing argument, asserted that certain evidence was uncontradicted. The defendants claim that the comments amounted to a violation of their constitutional right to remain silent. *U. S. Const.* amends. V and XIV; *Colo. Const.* Art. II, Sec. 18. Excerpts from the statements made in the closing argument are:

"And primarily we will spend a few minutes, if you will allow me just to review the facts; and I think at this point that most of them are uncontroverted."

"All right those basically are the facts. . . . I believe there is no contradiction. Defendants will agree to that. There is no other evidence at this point."

"I submit that I think it's a reasonable inference that the Todds made that phone call to Sears to Mr. Winzurk. There is no evidence that they did, but there is also no evidence that they didn't make that phone call."

"Mr. Lozow has asked you to look at all the shadows in this case, and all I am asking you is to look at is the substance, those hard uncontradicted facts."

The statements do not fall within the limitative provisions of *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). The courts have not been in agreement in their interpretation of *Griffin v. California, supra*, when the prosecution has argued that the evidence is "uncontroverted" or "uncontradicted." *See* Annot., *Comment or Argument by Counsel That Prosecution Evidence is Uncontradicted as Amounting to Improper Reference to Accused's Failure to Testify*, 14 A.L.R.3d 723 (1967). Factors which have entered into the determination of whether the prosecution's argument constituted fair comment or an unconstitutional reference to the failure of the accused to testify have been: (1) Whether the comment referred specifically to the defendant's failure to take the stand or to rebut the evidence against him. *See People v. Sanchez*, 184 Colo. 25, 518 P.2d 818 (1974). (2) Whether the trial judge, after objection was made, gave a cautionary instruction to the jury to disregard the comments or the remarks relating to the failure of the accused to testify. *Knowles v. United States*, 224 F.2d 168 (10th Cir. 1955). (3) Whether the prosecutorial comments were aggravated or repetitive. *Rodriguez-Sandoval v. United States*, 409 F.2d 529 (1st Cir. 1969). (4) Whether the defendant was the only person who could refute the evidence which caused the comments to be directly pointed at the accused. *Edwards v. Patterson*, 249 F.Supp. 311 (D. Colo. 1965); *Montoya v. People*, 169 Colo. 428, 457 P.2d 397 (1969).

In short, the question is whether the comment and context was calculated or intended to direct the attention of the jury to the defendants' neglect or failure to testify in their own behalf. *Montoya v. People, supra; Martinez v. People*, 162 Colo. 195, 425 P.2d 299 (1967).

The comments by the prosecutor in this case do not, in our opinion, direct the jury's attention to the defendants' failure to testify and do not violate the rules laid down in *Martinez v. People, supra*, or in *Griffin v. California, supra*. In protecting the accused against unfair comment, we are not compelled to limit advocacy or to gag the prosecution in legitimate oral argument covering the evidence and inferences which can be drawn from the evidence. *See ABA Standards for Criminal Justice, The Prosecution Function* § 5.8.

### III.
### Sufficiency of the Evidence

■ In adopting the substantial evidence test for the purpose of evaluating a motion for a judgment of acquittal, we said:

"The issue before the trial judge is whether the relevant evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt." *People v. Bennett*, 183 Colo. 125, 515 P.2d 466 (1973); *accord, People v. McClendon*, 188 Colo. 140, 533 P.2d 923 (1975).

■ Following the *Bennett* test, the issue was for the jury, and the motion for a judgment of acquittal was properly denied. The prosecution established that the Todds obtained control of money belonging to Sears by deceptive practice with the intent to deprive Sears of the money. 1971 Perm. Supp., C.R.S. 1963, 40-4-401.[4]

■ The inference which may be drawn from the record by reasonable minds is that the Todds entered into a continuing scheme to deprive Sears of $308.95 through deception. The Todds offered no evidence, and they cannot complain that the jury drew inferences of guilt from the prosecution's evidence. *People v. Haggart*, 188 Colo. 164, 533 P.2d 488 (1975).

Not only was theft by deception established, but also the conspiracy count was proven. The prosecution showed an agreement, a common design between the Todds, and an unlawful purpose. C.R.S. 1963, 40-7-35.[5]

We, therefore, affirm.

MR. CHIEF JUSTICE PRINGLE, MR. JUSTICE DAY, and MR. JUSTICE GROVES concur.

---

[4]Now section 18-4-401, C.R.S. 1973.
[5]Now section 18-2-201, C.R.S. 1973.