23CA0303 Peo v Lopez 07-17-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA0303
Arapahoe County District Court No. 22CR693
Honorable Darren L. Vahle, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Mikyl Kristen Lopez,

Defendant-Appellant.

---

JUDGMENT AFFIRMED AND CASE
REMANDED WITH DIRECTIONS

Division II
Opinion by JUDGE HARRIS
Fox and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 17, 2025

---

Philip J. Weiser, Attorney General, Emmy A. Langley, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Julieanne Farchione, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    Defendant, Mikyl Kristen Lopez, was charged with one count of forgery, a felony, and one count of theft, a petty offense, after her manager suspected that she had exchanged two counterfeit bills — a $50 bill and a $10 bill — for genuine bills in the cash register at the IHOP restaurant where she worked as a server.

¶ 2    At trial, Lopez's defense was that she did not know the bills were counterfeit, and she had exchanged them to make change for a customer or to get a crisper bill.  The jury rejected that defense and found her guilty as charged.[1]

¶ 3    The court sentenced her to a term of imprisonment.  After the sentencing hearing, the court added various surcharges and fees to the mittimus.

¶ 4    On appeal, Lopez contends that the evidence was insufficient to support the forgery and theft convictions and that the trial court reversibly erred (1) by admitting evidence concerning the falsity of the bills; (2) in instructing the jury on the elements of forgery; (3) by

---

[1] Lopez was also convicted of unlawful possession of a controlled substance, *see* § 18-18-403.5(1), C.R.S. 2024, but she does not appeal that conviction.

allowing prosecutorial misconduct; and (4) by imposing surcharges after sentencing.

¶ 5    We agree only with her last contention.  Therefore, we affirm her convictions, but we remand the case to the trial court to give Lopez an opportunity to request a waiver of the surcharges.

## I.    Sufficiency of the Evidence Challenges

¶ 6    Lopez argues that the evidence was insufficient to support both her forgery and theft convictions.

### A.    Standard of Review

¶ 7    On a challenge to the sufficiency of the evidence, we review the record de novo to determine whether the evidence, viewed as a whole and in the light most favorable to the prosecution, is sufficient to support a conclusion by a reasonable jury that the defendant is guilty of the charge beyond a reasonable doubt.  *People v. Harrison*, 2020 CO 57, ¶ 32.  We examine both direct and circumstantial evidence, and we give the prosecution the benefit of every reasonable inference that could be fairly drawn from the evidence.  *People v. Perez*, 2016 CO 12, ¶¶ 24-25.  "If there is evidence upon which one may reasonably infer an element of the

2

crime, the evidence is sufficient to sustain that element." *People v. Chase*, 2013 COA 27, ¶ 50.

¶ 8     When a sufficiency of the evidence challenge depends on statutory interpretation, we interpret the statute de novo. *People v. Vidauri*, 2021 CO 25, ¶ 11. We begin with the language of the statute, giving words and phrases their "plain and ordinary meanings" and reading them in context "according to the rules of grammar and common usage." *McCoy v. People*, 2019 CO 44, ¶ 37.

## B.     Analysis

¶ 9     A person commits forgery if, "with intent to defraud, the person falsely makes, completes, alters, or utters a written instrument that is or purports to be, or that is calculated to become[,] . . . [p]art of an issue of money . . . issued by a government or government agency." § 18-5-102(1)(a), C.R.S. 2024. To "[u]tter" means "to transfer, pass, or deliver, or attempt or cause to be transferred, passed, or delivered, to another person any written instrument, article, or thing." § 18-5-101(8), C.R.S. 2024. A "[w]ritten instrument" includes "any money . . . which is capable of being used to the advantage or disadvantage of some person." § 18-5-101(9).

3

¶ 10    Lopez first argues that because the statutory definition of "utter" requires passing the bill "to *another person*," § 18-5-101(8) (emphasis added), it is similar to the offense of robbery, which requires that a defendant "knowingly take[] anything of value *from the person or presence of another*," § 18-4-301(1), C.R.S. 2024 (emphasis added); *People v. Mortenson*, 2023 COA 92, ¶¶ 12, 16 (evidence was insufficient to sustain a robbery conviction when the victim was a business, not a person).  She says that under *Mortenson*, her forgery conviction is unsupported by sufficient evidence because she merely removed bills from an "unattended cash register," not a person's physical presence.

¶ 11    Under section 2-4-401(8), C.R.S. 2024, which applies to "every statute, unless the context otherwise requires," a "[p]erson" includes "any . . . corporation."  So the statutory definition of "utter," which here required that Lopez pass the bills "to another person," § 18-5-101(8), includes passing them to a corporation like IHOP, "unless the context otherwise requires," § 2-4-401(8).

¶ 12    The context does not require us to hold differently here.  The robbery statute requires a taking "from the person or presence of another" by "force, threats, or intimidation."  § 18-4-301(1).

4

Colorado courts have interpreted this language to limit victims of robberies to "people, not businesses," *Mortenson*, ¶ 12, in part, "because of the added element of personal violence or intimidation," *People v. Borghesi*, 66 P.3d 93, 100 (Colo. 2003) (citation omitted). Forgery, by contrast, need not be committed by "personal violence." *Id.*

¶ 13 Furthermore, the robbery statute requires that property be taken "from the *presence of another*," meaning the property "is so within the victim's reach, inspection or observation that he or she would be able to retain control over [it] but for the force, threats, or intimidation directed by the perpetrator against the victim." *People v. Bartowsheski*, 661 P.2d 235, 244 (Colo. 1983) (emphasis added). This language implies that, unlike a business or corporation, a robbery victim must be capable of exercising control over property and of responding to force, threats, or intimidation. *See id.* Conversely, the forgery statute's definition of "utter" merely requires passage "to another person," with no corresponding presence requirement. § 18-5-101(8). We therefore reject Lopez's analogy and her conclusion that a forgery victim must be a human person.

¶ 14    Lopez next contends that the evidence was insufficient to establish that the bills she placed in the IHOP register (the IHOP bills) were counterfeit.

¶ 15    Lopez's supervisor, who testified that he had been "in the business a long time," stated that the IHOP bills appeared fraudulent because their texture felt "more on the paper side and not more the texture that money has . . . like linen paper feel."  He said that he had noticed the coloring was "way off"; that the IHOP bills were missing "metallic ink"; and that they had a "slight, blurry texture to them."  The arresting officer testified that when she collected the IHOP bills at the scene, she noticed that the edges were visibly jagged, the coloring was pixelated, and the bills had no watermarks when held up to the light.  The prosecution's investigator also testified that the numbers on the bills were not clear, shiny, or metallic; the edges were jagged; the margins were uneven; and the watermarks were missing.  Photos of bills taken from the district attorney's petty cash box and the IHOP bills were entered into evidence, and the jurors could compare the two sets of bills for themselves.

¶ 16    Viewing this evidence in the light most favorable to the prosecution, we conclude that a reasonable juror could have found that the bills were counterfeit.

¶ 17    Finally, Lopez contends that the prosecution failed to prove the requisite mens rea to support either conviction.  She argues that because the prosecution did not show that she knew the bills were counterfeit, the evidence was insufficient to show she had the intent to defraud IHOP or that she had the intent to permanently deprive IHOP of its property.  *See* § 18-5-102(1)(a) (A person commits forgery if they falsely utter a written instrument "with intent to defraud."); § 18-4-401(1)(a), C.R.S. 2024 (A person commits theft if the person "knowingly obtains, retains, or exercises control over anything of value of another without authorization" and "[i]ntends to deprive the other person permanently of the use or benefit of the thing of value.").

¶ 18    Lopez's manager testified that he found the bills in the cash register and, suspecting they were counterfeit, he consulted security camera footage.  He discovered that Lopez was the last person to touch the register.  The prosecution played the surveillance footage for the jury, which showed Lopez entering the

IHOP manager's office twice to access the cash register drawer. Both times, she removed a bill from her person and placed it into the drawer then shuffled the money in the drawer so that the bill would not be on top of the pile or visible. In one transaction, she exchanged a $10 bill from her front pocket with a $10 bill from the register drawer, and testimony from her manager established that such an even exchange was not consistent with making change for a customer. He also testified that there were no customers in the store at the time Lopez accessed the register.

¶ 19 We conclude that the jury could reasonably infer from this evidence that Lopez knew the IHOP bills were counterfeit and, therefore, that she had the requisite intent to defraud IHOP and to permanently deprive IHOP of its property.

## II. Evidentiary Challenges

¶ 20 Lopez next contends that the trial court erred by admitting prejudicial photo evidence over her objection and by allowing lay testimony comparing the two IHOP bills with two bills obtained from the district attorney's petty cash box.

## A. Standard of Review

¶ 21    We review the trial court's evidentiary rulings for an abuse of discretion. *People v. Montoya*, 2024 CO 20, ¶ 41. If the defendant's claim of error is preserved and we determine that the court erred, we apply a harmless error standard to determine whether reversal is warranted. *People v. Garrison*, 2017 COA 107, ¶ 31. Under this standard, we will reverse a conviction if the error "substantially influenced the verdict or affected the fairness of the trial proceedings." *People v. Martinez*, 2020 COA 141, ¶ 28 (citation omitted). But if the claim is unpreserved, we will reverse only if the error is plain, meaning an error occurred, the error was obvious, and the error's effect is "so grave that it undermines the fundamental fairness of the trial itself and casts doubt upon the reliability of the conviction." *People v. Ambrose*, 2021 COA 62, ¶ 66 (citation omitted).

¶ 22    To preserve a claim for appeal, a party must object in the trial court on the same grounds they assert on appeal. *Cf. People v. Ujaama*, 2012 COA 36, ¶ 37.

9

## B.  Photo Evidence

¶ 23    Lopez's manager testified that after he identified the two suspected counterfeit bills, he removed two additional bills of the same denomination from the register for comparison, then took a photograph of all four bills.  He said that he drew a circle on the suspected counterfeits with his phone, labeled them "FAKES" in red writing, then sent the photo to his supervisor.  When the prosecutor moved to admit the photo, Lopez objected "under [CRE] 403" because of the "FAKES" label.  The court overruled the objection, noting, "I think that's been explained."

¶ 24    Lopez contends that the court abused its discretion by admitting the photo because any probative value it had was substantially outweighed by the danger of unfair prejudice from the manager's "highly inflammatory" writing on the photo, which she says directed a conclusion that Lopez knew the bills were forged.

¶ 25    Even assuming the trial court erred, we conclude any error was harmless.  As the court noted, in his testimony about the photo, Lopez's manager explained that he labeled the suspected counterfeit bills "fakes" for the purpose of his own comparison and before sending the photo to his boss.  Thus, the labeling suggested

10

that *the manager* thought the bills were fake, a point also established by the manager's testimony, but the photo itself did not suggest that the bills were in fact counterfeit. And even if it did, the photo did not suggest that Lopez *knew* the bills were counterfeit.

¶ 26     Lopez also argues that because multiple witnesses (including Lopez's manager) testified to the characteristics of the IHOP bills and because the bills themselves were entered into evidence, the photo was cumulative and had virtually no probative value. *See People v. Vanderpauye*, 2023 CO 42, ¶ 59 (under CRE 403, otherwise relevant evidence may be excluded when its probative value is substantially outweighed by the danger of unfair prejudice). But this argument actually cuts against Lopez's position — because the prosecution had already presented similar, unchallenged evidence, any error was harmless. *See People v. Russell*, 2014 COA 21M, ¶ 27 (when evidence is cumulative, any error in its admission is harmless), *aff'd*, 2017 CO 3; *People v. James*, 117 P.3d 91, 95 (Colo. App. 2004) ("[A]ny error was harmless in light of similar evidence, presented through other witnesses . . . .").

## C. Lay Testimony

¶ 27     At trial, the prosecution's investigator testified regarding the physical characteristics of the two IHOP bills and the physical characteristics of two bills of the same denomination that the investigator obtained from the district attorney's petty cash drawer. The investigator observed that, among other things, the bills taken from petty cash each had images that had "a shine," uniform margins, and visible watermarks when held up to the light. He also testified that the IHOP bills did not have the same shininess, had uneven margins, and contained no visible watermarks.

¶ 28     Lopez objected to the investigator's testimony below on the grounds that it was expert testimony, and therefore, the investigator had to be qualified as an expert under CRE 702. The court ruled that the testimony was admissible lay testimony under CRE 701.

¶ 29     On appeal, Lopez now argues that to prove the bills were counterfeit, the prosecution should have called an expert and that even if the investigator could properly testify about the bills under CRE 701, his testimony was unhelpful because he failed to explain the significance of the differences between the two sets of bills.

12

Because these are not the arguments Lopez raised in the trial court, plain error review applies. *See Ujaama*, ¶ 37.

¶ 30    Under CRE 701, a lay witness may testify to opinions or inferences if they are (a) rationally based on the perception of the witness; (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of CRE 702. The investigator did not give any opinion. He testified to his observations, comparing characteristics of the two sets of bills he examined. Because these observations would be within "an ordinary person's experiences or knowledge," *Venalonzo v. People*, 2017 CO 9, ¶ 23, and because the investigator did not opine on the IHOP bills' authenticity or fraudulence, we discern no error, much less plain error. *Cf. United States v. Dorsett*, 544 F.2d 687, 689 (4th Cir. 1976) (no error where lay witness testified to differences between known counterfeit bill and alleged counterfeit bill but did not offer conclusions about authenticity of alleged counterfeit bill).

¶ 31    Lopez counters, though, that if all the investigator offered was his nonexpert observations of the bills, his testimony was not

helpful to the jury. She argues that the lack of evidence establishing the significance of the physical traits observed by the investigator rendered his comparison testimony essentially meaningless and without probative value. And she says the error was compounded by the fact that the investigator was employed by the district attorney's office.

¶ 32    Even assuming error, however, we cannot say that the testimony so undermined the fundamental fairness of the trial as to cast serious doubt on the reliability of the conviction. At trial, Lopez did not seriously dispute that the IHOP bills were counterfeit bills — rather, her theory of defense was that she did not know they were counterfeit. *See People v. Douglas*, 2015 COA 155, ¶ 52 (lay testimony identifying plants as marijuana was harmless in part because defendant did not seriously dispute that the plants were marijuana). And the jury heard testimony from two other lay witnesses about the physical characteristics of the IHOP bills, testimony that Lopez does not challenge on appeal. *See People v. Arzabala*, 2012 COA 99, ¶ 80 (improperly admitted evidence did not amount to plain error when the evidence was cumulative). Finally, the jurors could compare the sets of bills themselves to reach their

14

own conclusions about the IHOP bills' authenticity.  *Cf. People v. Rodriguez,* 2021 COA 38M, ¶ 12 (no plain error when an officer testified about what he heard in a recording because the jurors also heard the recording and could decide for themselves whether the officer's testimony was accurate).

### III.   Jury Instruction

¶ 33    The trial court's instruction to the jury on the forgery charge provided that the elements of forgery were

> 1. That Ms. Lopez,
>
> 2. in the state of Colorado, at or about the date and place charged,
>
> 3. with intent,
>
> 4. to defraud,
>
> 5. *uttered a written instrument,*
>
> 6. which was, or which purported to be, or which was calculated to become or to represent if completed,
>
> 7. part of an issue of money, stamps, securities, or other valuable instruments issued by a government or government agency.

(Emphasis added.)

¶ 34    Lopez challenges element five of the instruction, arguing that under the plain language of section 18-5-102(1), the phrase "utters

15

a written instrument" must be preceded by "falsely" because "falsely utters" conveys the requirement that Lopez knew the IHOP bills were fake when she passed them. *See, e.g., Pollock v. People*, 443 P.2d 738, 739 (Colo. 1968) (A person commits forgery "by uttering a forged instrument, i.e., by offering a forged instrument to another *with knowledge of the falsity of the writing* and with intent to defraud.") (emphasis added).

¶ 35    "We review jury instructions de novo to determine whether they accurately inform the jury of the governing law." *McDonald v. People*, 2021 CO 64, ¶ 54 (citation omitted). When a defendant fails to object to proposed jury instructions, as Lopez failed to do here, the instructions are reviewed for plain error, meaning Lopez must show not only that the error was obvious and substantial but also that the record shows a reasonable probability that the erroneous instruction contributed to the conviction. *See Hoggard v. People*, 2020 CO 54, ¶ 13.

¶ 36    Assuming, without deciding, that the omission of "falsely" was error, we conclude that Lopez has not shown a reasonable possibility that the erroneous instruction contributed to her conviction. A trial court's failure to instruct the jury properly does

not rise to the level of plain error if the instructions, taken as a whole, adequately inform the jury of the law. *People v. Alvarado*, 284 P.3d 99, 101 (Colo. App. 2011). Here, elements three, four, and five of the forgery instruction state that to be guilty of forgery, a person must utter a written instrument with intent to defraud. The definitional instruction specified that "[a] person acts . . . 'with intent' when her conscious objective is to cause the specific result proscribed by the statute defining the offense."

¶ 37 Read together, the instructions unambiguously informed the jury that, to convict Lopez of forgery, it had to find that her conscious objective was to defraud IHOP using a written instrument. Lopez does not explain, and we do not see, how the jury could find that Lopez intended to defraud IHOP by passing the bills without finding that she knew the IHOP bills were counterfeit.

IV. Prosecutorial Misconduct

¶ 38 In closing argument, Lopez's counsel argued that the prosecution had failed to satisfy its burden to show that there was no "innocuous, simple explanation" for her exchange of the bills. In rebuttal, the prosecution argued that

17

[t]he Defense also mentioned something about other explanations, other explanations about why [Lopez] would do that, why [Lopez] would replace a 10 for a 10?

Well, reasonable doubt is a doubt which is not vague, speculative or imaginary, and . . . in this case, *the evidence that you're to consider is not what the lawyers say, but it's what the witnesses say,* it's what the exhibits are going to bring out of evidence. You are to consider not what we say, but *any inferences from the evidence from the witness's mouth.* And what we have here is no evidence that [Lopez] wanted, like nicer looking bills or wanted to exchange a 50 for a 20 or a 10 just because she wanted to.

(Emphases added.) On appeal, Lopez contends that the prosecutor committed misconduct by telling the jury to consider only "inferences from the witness's mouth." According to Lopez, the comment implied that she was obligated to testify and supply an innocent explanation for her conduct, and her failure to do so indicated her guilt.

¶ 39　　To determine whether a comment constitutes an impermissible reference to the defendant's failure to testify, we consider, among other factors, whether "the comment referred specifically to the defendant's failure to take the stand or to rebut the evidence against him," whether the comments were "aggravated

18

or repetitive," and whether the defendant was "the only person who could refute the evidence which caused the comments to be directly pointed at the accused." *People v. Todd*, 538 P.2d 433, 436 (Colo. 1975). We review an unpreserved prosecutorial misconduct argument for plain error, meaning we will reverse only if the misconduct was "flagrant or glaringly or tremendously improper" and "so undermine[d] the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction." *People v. McMinn*, 2013 COA 94, ¶ 58.

¶ 40    Here, we discern no error, let alone plain error. The brief and isolated comment reminded the jury that it was to consider the testimony of the witnesses and other evidence admitted at trial, not the arguments of counsel. *Cf. People v. Payne*, 2019 COA 167, ¶¶ 40-41 (no plain error when prosecutor reminded jury that closing arguments are not evidence). The prosecutor did not specifically refer to Lopez's decision not to testify, and the comment was responsive to Lopez's argument that the prosecution had failed to meet its burden of proof regarding Lopez's intent to defraud IHOP. *See McMinn*, ¶ 60 ("[P]rosecutors have wide latitude . . . in replying to an argument by opposing counsel."). Hence, we do not

think that this comment was "calculated or intended to direct the attention of the jury" to Lopez's failure to testify. *Howard-Walker v. People*, 2019 CO 69, ¶ 44 (citation omitted).

¶ 41     To the extent Lopez also argues that the prosecutor's comments impermissibly shifted the burden of proof, we reject that argument.  The prosecutor did not specifically argue that Lopez carried the burden of proof, the comment was a "fair response," *People v. Duncan*, 2023 COA 122, ¶ 32 (quoting *People v. Santana*, 255 P.3d 1126, 1130 (Colo. 2011)), to the argument made by Lopez's counsel, and the jury was informed by counsel and the court about Lopez's presumption of innocence and the prosecution's burden of proof, *see id.*

## V.     Surcharges and Fees

¶ 42     Finally, Lopez contends that the trial court erred by failing to provide her with an opportunity to seek waivers for surcharges and fees imposed outside of her presence and after sentencing.  Because a sentencing court may not impose a statutorily mandated but waivable surcharge or fee outside of the defendant's presence without giving her an opportunity to ask for a waiver and receive a hearing, we agree.  *See Waddell v. People*, 2020 CO 39, ¶ 28;

*Yeadon v. People*, 2020 CO 38, ¶ 15. We therefore remand to the district court with instructions to allow Lopez the opportunity to request a waiver of any waivable surcharges or fees.

## VI. Disposition

¶ 43 The case is remanded to the trial court with directions to allow Lopez to request a waiver of the surcharges and fees imposed outside of her presence. In all other respects, the convictions and sentences are affirmed.

JUDGE FOX and JUDGE SCHUTZ concur.